25 N.J. Super. 534 (1953)
96 A.2d 723
STATE OF NEW JERSEY, PLAINTIFF,
v.
GORDON MORRISON, DEFENDANT.
Superior Court of New Jersey, Essex County Court Law Division.
Decided May 8, 1953.
*535 Mr. George K. Meier, Jr., for the State of New Jersey (Mr. Edward Gaulkin, Essex County Prosecutor, attorney; Mr. Melvin P. Antell, on the brief).
FRANCIS, J.C.C.
This case involves the validity of two accusations of sodomy against the defendant, arising out of his lascivious and highly reprehensible conduct with two female children. The conduct alleged to have been engaged in consisted in: (1) an act of fellatio forced upon one of them, and (2) other acts approaching cunnilingus, although the completed perversion does not appear to have been committed. Pleas of non vult were taken to the accusations, but study of the details of the alleged offenses in preparation for sentencing led the court to raise the question whether the acts committed come within the denouncement of our sodomy statute. While one can feel no sympathy for the perpetrator of such loathsome acts upon the persons of children, the inquiry must nevertheless be made as to whether the misconduct charged constitutes sodomy or whether its certain criminality must rest upon the interdictions of other statutes. The immediate and major concern is with the legal nature of the act of fellatio or penetration per os; it is clear that the other acts do not constitute sodomy.
Sodomy is defined in the following terms in N.J.S. 2A:143-1:
"Sodomy, or the infamous crime against nature, committed with man or beast, is a high misdemeanor, and shall be punished by a fine of not more than $5000, or by imprisonment for not more than 20 years, or both."
*536 It is readily apparent that the statute offers no direct guidance as to the kind or kinds of acts forbidden. The enactment suffers in this respect from the great concern for delicacy that has usually marked the treatment of this crime both at common law and in legislation. The offense has always been regarded as something so base and defiling as to be dealt with only in veiled terms. Latin was the medium of expression used in common-law indictments charging sodomy, and ancient and modern precedents are in accord that such indictments and informations need not be cast in particular terms descriptive of the act committed. State v. Pitman, 98 N.J.L. 626 (Sup. Ct. 1923), affirmed on opinion, 99 N.J.L. 527 (E. & A. 1924); Honselman v. People, 168 Ill. 172, 48 N.E. 304 (Sup. Ct. 1897); People v. Williams, 59 Cal. 397 (Sup. Ct. 1881); 2 Cooley's Blackstone, p. 1377. All in all, this calculated avoidance of indelicacy has resulted in quite some obscurity and uncertainty in dealing with a most heinous crime, the seriousness of which is attested by the fact that our Legislature has prescribed such a high penalty for its commission, and that in the early days of English law burying alive or burning to death was the punishment meted out. Cooley's Blackstone, supra.
Since there appear to be no precedents in this State on the subject of inquiry, our recourse must be primarily to the common law in determining the elements of the crime. State v. Pitman, supra. Sodomy was known by that name at common law and as "the infamous crime against nature." There can be no doubt, therefore, that our legislative declaration, using the same terminology, is rooted in the common-law concept of sodomy, and that a fair appraisal of the legislative intendment does not take us beyond such concept. Therefore, while the case law of other jurisdictions contains much that is instructive and thought-provoking, it is obvious that their pronouncements in expansion of the common-law doctrine cannot be accepted as sound precedents. Two principles must be accorded paramount importance in resolving the present problem: (1) penal statutes must be strictly construed (State v. Mundet Cork Corporation, 8 N.J. *537 359 (1952); State v. Meinken, 18 N.J. Super. 188 (App. Div. 1952), affirmed 10 N.J. 348 (1952); State v. Brenner, 132 N.J.L. 607 (E. & A. 1945)); and (2) if a change in the common law is to be effected by statute, the legislative intent to accomplish the change must be clearly and plainly expressed. (Blackman v. Iles, 4 N.J. 82, 89 (1950); Carlo v. The Okonite-Callender Cable Co., 3 N.J. 253, 265 (1949)).
There is almost complete accord among text-writers that at common law commission of the crime required penetration per anum, and that penetration per os did not constitute the offense. 1 Wharton's Criminal Law (11th ed.), sec. 754; 3 Russell on Crimes 249; 2 Bishop's Criminal Law (7th ed.), sec. 1191; 2 McClain's Criminal Law, 1153; 3 Burdick on Crimes, p. 293 et seq. The only text-writer cited as authority for the claim that penetration per os was sodomy at common law is Hawkins. And the argument is made to rest solely upon his statement that: "All unnatural copulations, whether with man or beast, seem to come under the notion of sodomy." (1 Hawkin's Pleas of the Crown (Leach's ed.), p. 9.). This statement alone scarcely seems sufficient foundation for the broad criminal structure that it is supposed to bear. Even were it not for the uncertainty implied by the word "seem," it is fairly inferable that the author was merely saying that the term "sodomy" was broad enough to include not only acts committed between human beings, but also those performed between human beings and animals, the specific name for which is "buggery."
Undoubtedly the "source" case on the subject is Rex v. Jacobs, Russell & Ryan's Crown Cases, 331, decided in 1817. This case is the more remarkable because it appears to be the only reported English case in which the instant inquiry was squarely raised and ruled upon. The defendant had been convicted of sodomy on evidence that the act was perpetrated in the mouth of a seven-year-old boy. It was the opinion of the judges that this did not constitute sodomy and they directed that a pardon be applied for. While one is surprised by the dearth of English case law in this field, *538 the explanation might lie in the fact that the exclusive nature of the crime has been generally accepted, and prosecutions for sodomy have been restricted to cases where entry per anum was effected.
On the American scene the situation has been quite different. Many courts of last resort have dealt with the question, with varying results. It is possible to make the general observation that while there is little disagreement as to what the common-law doctrine is, there is a marked lack of sympathy for its narrow confines and a decided effort to avoid its application. The hostility displayed has undoubtedly fathered a great deal of zeal to find in the respective statute law some rational basis for the conclusion that the Legislature had dealt in broad terms with the general problem of unnatural copulation, regardless of the nature of the act committed. But in only a few cases can it fairly be said that the statute furnishes logical support for such a conclusion. Most of the cases that extend the term to include the type of act described as fellatio carry little conviction that the statute involved warrants the broader view. On the contrary, they give the impression that the decisions amount to judicial legislation.
In assaying the current state of the law the very great number of American decisions makes it both practical and necessary to set up groups or classifications according to the statutory provisions of the several jurisdictions. And it is only logical to deal first with those cases where the statutory prohibition against sodomy is cast in the simple terms of the common law and where their construction has not been held to be affected by the interplay of other enactments. This group, then, will comprise those situations where the statute law describes the crime in such various terms as: "the infamous crime against nature," "the abominable and detestable crime against nature," and "the crime of sodomy or buggery." Numerically speaking, the jurisdictions cleaving to the common-law rule outnumber the opponents of the rule by seven to six. In this classification we have the states of Arizona, California, Colorado, Kentucky, Nebraska, Texas *539 and Utah supporting the idea that penetration per os does not constitute the crime of sodomy, while Delaware, Florida, Maine, Nevada, North Carolina and Oklahoma hold to the contrary.
Considered qualitatively, the majority group has more persuasive force than those opposed, especially in view of the rules of strict construction which must be applied. Of particular note is the case of Koontz v. People, 82 Col. 589, 263 P. 19 (Sup. Ct. 1927), where the court said:
"The statute does not say, `one of the crimes against nature,' or `a crime against nature,' or `any crime against nature,' but `the infamous crime against nature.' At common law, `the infamous crime against nature' was sodomy. 4 Blackstone Comm., p. 215. * * * At common law, sodomy, `the infamous crime against nature,' was committed only by penetration per anum; penetration per os did not constitute the crime."
So, too, runs the reasoning in State v. Johnson, 44 Utah 18, 137 P. 632 (Sup. Ct. 1913), where the court, after observing that the statute requires the common law to be the rule of decision where not repugnant to the law of the state, said:
"At common law `sodomy' and the term `the infamous crime against nature' meant the same thing and were used interchangeably. * * *
In Wharton's Criminal Law (11th ed.), Sec. 754, it is said: `Sodomy proper is the carnal copulation of human beings in other than the natural manner, that is, `against nature' and per anum.' This, says the author, is the common-law definition."
See also, Commonwealth v. Poindexter, 133 Ky. 720, 118 S.W. 943 (Ct. App. 1909), for a considered treatment of the impact of common-law doctrine on such statutes. It should be noted in passing that Nebraska, one of the states cited above for the majority view (Kinnan v. State, 86 Neb. 234, 125 N.W. 594 (Sup. Ct. 1910)), has changed its statute on sodomy so that it clearly includes the act of fellatio. Cf. Sledge v. State, 142 Neb. 350, 6 N.W.2d 76 (Sup. Ct. 1942).
In the six jurisdictions in this group opposed to the common-law view we find the Nevada Supreme Court so holding because the statute does not use the word "sodomy," *540 and concluding that "the infamous crime against nature" is broad enough to include all unnatural copulations. It is conceded, however, that the result would probably be otherwise if the word "sodomy" were used in the statute. Ex parte Benites, 37 Nev. 145, 140 P. 436 (Sup. Ct. 1914). North Carolina finds "the detestable and abominable crime against nature" broad enough to include "other forms of the offense than sodomy or buggery." Delaware and Maine both reject Rex v. Jacobs, supra, in favor of more recent authorities favoring the broad construction, and the former points to the fact that the phrase "the crime against nature" does not contain a limitation as to the means to be used in committing the crime, while the latter finds the same phrase broad enough to embrace all unnatural copulations. State v. Maida, 6 Boyce 40, 96 A. 207 (Del. Gen. Sess. 1915); State v. Cyr, 198 A. 743 (Me. Sup. Ct. 1938). Oklahoma and Florida accept what they consider the better reasoned opinions favoring the view that all unnatural copulations come under the notion of sodomy. Ex parte De Ford, 14 Okla. Cr. R. 133, 168 P. 58 (Crim. Ct. App. 1917); Ephraim v. State, 82 Fla. 93, 89 So. 344 (Sup. Ct. 1921).
A second grouping may be made of those states where the statute law provides for liberal interpretation of criminal statutes and abrogates the rule of strict construction where a statute is in derogation of the common law. South Dakota and Idaho fall into this category. The case of State v. Whitmarsh, 26 S.D. 426, 128 N.W. 580 (Sup. Ct. 1910), so bases its conclusion that "the crime against nature" was meant by the legislature to include the "more heinous" form of the crime against nature which consists in penetration per os. This case, although it concedes that common-law sodomy could not be committed per os, is highly critical of the narrowness of this doctrine and takes the view that even if the statute used the word "sodomy" it would rely on the definition given by Hawkins and modern lexicographers in construing that term to include all unnatural forms of copulation. This case has been a rather potent influence in fashioning the thought of courts in other jurisdictions.
*541 A third grouping comprises those states in which the statutes defining sodomy are stated in common-law terms, but there has been superimposed upon such definition a provision that proof of actual penetration into the body shall be sufficient to establish rape or the crime against nature (Kansas and Oregon), and in Montana a provision that any "sexual penetration" is sufficient to complete the crime against nature. Logically or not, the courts of these states have found that since these statutes do not specify the particular opening of the body through which entry must be made, the sodomy statute is ipso facto broadened to include all methods of unnatural copulation. Because of the influence it has wielded, as indicated by frequency of citation, the case of State v. Start, 65 Ore. 178, 132 P. 512 (Sup. Ct. 1913), is the most important in this category and the most important generally on the side of broad construction. This case takes to task the text-writers for following the ipse dixit of Rex v. Jacobs, supra, without giving reasons therefor, and contends that the true extent of the common-law rule is to be found in the statement in Hawkins Pleas of the Crown, supra, rather than in the Jacobs case. The court argues with much force that it is as much against nature to make sexual entry at one end of the alimentary canal as at the other. Other cases in this statutory category are: State v. Hurlbert, 118 Kans. 362, 234 P. 945 (Sup. Ct. 1925), and State v. Guerin, 51 Mont. 250, 152 P. 747 (Sup. Ct. 1915).
Rulings in some other jurisdictions are of no aid in the circumstances that mark this case. Their statutes contain unique expressions or provisions that render the case law construing them beyond the area of true comparison. Alabama forbids "a crime against nature." Woods v. State, 10 Ala. App. 96, 64 So. 508 (Ct. App. 1914). Indiana classifies as a sodomist any one who commits "the abominable and detestable crime against nature" or who entices, aids or instigates any one under 21 years of age to commit masturbation. The Supreme Court of that state rightfully, we think, took such a statutory utterance to mean that the Legislature intended to include penetration per os within *542 the scope of sodomy. And, more than that, the court comments that the present form of the statute is an evolution from prior legislation that limited sodomy to carnal knowledge per anus. Clover v. State, 179 Ind. 459, 101 N.E. 629 (Sup. Ct. 1913). In Honselman v. People, 168 Ill. 172, 48 N.E. 304 (Sup. Ct. 1897), an oft-cited case, the ruling that sodomy includes fellatio was based upon the fact that the criminal code provides that "Every person convicted of the crime of * * * sodomy or other crime against nature * * * shall be * * * infamous." It is within reason that such a provision would give color to the phrase "the infamous crime against nature" as used in the sodomy statute. In the case of Herring v. State, 46 S.E. 876 (1904), the Supreme Court of Georgia construed the word "sodomy" in a subornation of perjury proceeding to include copulation per os, but observed that the statute of that state defines sodomy as "the carnal knowledge and connection against the order of nature," and consequently does not limit the method by which unnatural connection may be made. This case, too, has been accorded a position of prominence among the adherents of expanded construction.
It is worthy of note that the four leading cases which sponsor the idea that sodomy may be committed by entry per os, to wit, State v. Start, State v. Whitmarsh, Honselman v. People, and Herring v. State, all cited above, were decided under the aegis of special legislation that was given full play in reaching the results attained.
I have the firm conviction that our statute on sodomy cannot be construed to embrace the acts committed by the defendant. It employs simply those terms which have been accepted as synonymous expressions of the common-law crime, namely, "sodomy" and "the infamous crime against nature." There is nothing to suggest that the Legislature was charting a new course when it enacted the law. There is little short of unanimous accord among all the courts, whatever the trend of decision, that at common law the commission of sodomy required penetration per anum.
*543 While it is not difficult to understand the tendency of some courts to strain the principles of statutory construction in order to bring within the law of sodomy persons who engaged in the revolting practice of fellatio, especially where they would otherwise have gone free from prosecution, it is more salutary to keep uppermost in mind that the proper function of courts is not to create offenses but rather to construe fairly and truly the legislative will as it has been exercised in the penal field.
As has been previously stated, this defendant can be called to account under other criminal statutes, such as, the lewdness statute, for his revolting acts, but those statutes do not prescribe penalties as severe as those appearing in the sodomy act. However inadequate the use of the lewdness statute may be for the purpose of deterring or punishing the acts committed here, the remedy is not judicial legislation but an appeal to the Legislature to broaden the sodomy statute or to enact independent legislation specifically proscribing the conduct described in this prosecution. An example of such enactments may be found in Article 66, section 690 of the New York Penal Law (39 McKinney's Consolidated Laws of New York, p. 374, as originally enacted, and as amended 1952, cumul. pocket part, p. 70).
Under all the circumstances here, the non vult pleas to the accusations are vacated, the pleas of not guilty are reentered, and the matters are restored to the trial list.