Donald Ray EVANS, Petitioner,

v.

STATE of Tennessee, Respondent.

Supreme Court of Tennessee.

Sept. 11, 1978.

Jack M. Rudolph, Clarksville, for petitioner.

William O. Kelly, Asst. Atty. Gen., Brooks McLemore, Jr., Atty. Gen., Nashville, for respondent.

## OPINION

COOPER, Justice.

Petitioner, Donald Ray Evans, was convicted of first degree burglary, with the punishment for that crime being fixed by the jury at five to ten years in the penitentiary. The punishment was enhanced to life imprisonment under the provisions of T.C.A. § 40–2801 et seq. upon the jury's finding that the petitioner was an habitual criminal. On appeal, the Court of Criminal Appeals affirmed the judgment. We granted certiorari to clarify certain language in the principal opinion of that court concerning the number of convictions required to bring the habitual criminal statutes into play, and also to determine if the

petitioner's prior felony convictions were such as to support his sentencing as an habitual criminal. While the petitioner has raised several other issues in his assignments, we believe that these were disposed of correctly by the Court of Criminal Appeals, and do not merit further consideration by this court.

■ The habitual criminal act, T.C.A. § 40–2801 et seq., does not create an independent offense, but merely serves to enhance the punishment for a crime committed by a person who is an "habitual criminal." *Harrison v. State,* 217 Tenn. 31, 394 S.W.2d 713 (1965). An habitual criminal is defined in T.C.A. § 40–2801 as

[a]ny person who has either been three (3) times convicted within this state of felonies, not less than two (2) of which are among those specified in §§ 39–604, 39–605, 39–609, 39–610, 39–3708, 40–2712, 52–1432(a)(1)(A) or were for a crime punishable by death under existing law . . or who has been three (3) times convicted under the laws of any other state, government, or country of crimes, not less than two (2) of which, if they had been committed in this state, would have been among those specified in said §§ 39–604, 39–605, 39–609, 39–610, 39–3708, 40–2712, 52–1432(a)(1)(A) or would have been punishable by death under existing laws . . . . [,]

with the provisos that petit larceny is not to be counted as one of the three convictions, and that each conviction must be for a separate offense, committed on a separate occasion. Under T.C.A. § 40–2803, when an habitual criminal is indicted for one of the offenses specified in § 40–2801, the indictment may also include a count charging that the defendant is an habitual criminal. In the event that the defendant is convicted of this, the principal offense, the jury then considers the habitual criminal count. *Harrison v. State,* 217 Tenn. 31, 394 S.W.2d 713 (1965). If the jury finds that the defendant was an habitual criminal at the time he committed the principal offense, the punishment for that offense is enhanced to life imprisonment, with the further provision that the defendant is not eligible for parole. T.C.A. § 40–2806.

■ The principal opinion of the Court of Criminal Appeals, over the strong disagreement of two of the judges, stated that the crime of which the defendant stands charged may be used as one of the three felonies that are required under T.C.A. § 40–2801 to impose habitual criminal status on the defendant. Under this reading of the statute, the State would need to show a total of only three convictions in order to impose the increased punishment set forth in T.C.A. § 40–2806: Two prior convictions, and the present conviction, the punishment of which the State seeks to enhance. In reaching this conclusion, the author of the principal opinion relied on some admittedly misleading dicta in *Pearson v. State,* 521 S.W.2d 225 (Tenn.1975). Such an interpretation of the habitual criminal act is incorrect. The act provides that "when *an habitual criminal* as defined in § 40–2801 shall commit" [emphasis supplied] one of the enumerated felonies, the punishment for that crime will be enhanced. T.C.A. § 40–2806. Clearly, then, to bring the defendant within the ambit of the statute, the State must show that he was an habitual criminal *at the time he committed the principal offense.* Of necessity, such a showing must be made independently of that offense. Therefore, we hold that the present offense, the punishment of which the State seeks to enhance, may not be used as one of the convictions necessary to bring the defendant within the definition of an habitual criminal. *Wright v. State,* 217 Tenn. 85, 394 S.W.2d 883 (1965); *Brown v. State,* 186 Tenn. 378, 210 S.W.2d 670 (1948); *McCummings v. State,* 175 Tenn. 309, 134 S.W.2d 151 (1939).

In his assignments of error, the petitioner has questioned whether the prior crimes of which he was convicted are such as will support a finding that he was an habitual criminal at the time he committed this burglary.

In so far as it is material to this aspect of the case, the record reflects that, prior to his present conviction for burglary, the pe-

titioner had been convicted twice of felonious escape and once of crime against nature in Tennessee, and of both larceny from the person and the attempted breaking and entering of a building in Michigan. Faced with this evidence, the petitioner quite understandably does not question whether the number of his prior convictions is sufficient to bring him within the definition of an habitual criminal. He does, however, contend that the nature of those offenses is inadequate to do so. As we noted previously, for a person to be an habitual criminal, at least two of the three convictions necessary to bring him within that status must be for certain felonies specified in T.C.A. § 40–2801. Of the crimes committed by the petitioner, only larceny from the person and crime against nature are arguably among those specified in T.C.A. § 40–2801, the former as a result of the inclusion, by reference to T.C.A. § 40–2712, of larceny among the specified offenses, and the latter as a result of the inclusion of both sodomy and buggery by reference to the same statute. If the petitioner's conviction for larceny from the person was for "larceny" and if his conviction for crime against nature was for either "sodomy" or "buggery," as those three terms are used in T.C.A. § 40–2712, then the petitioner's sentencing as an habitual criminal may stand. If either proposition is false, then it may not, for then his prior crimes would not include two specified in T.C.A. § 40–2801, as required.

First, then, the question is whether the petitioner's conviction for the offense of larceny from the person in Michigan may serve as one of the specified offenses. We note that, at the time this offense was committed, the statutes of Tennessee and of Michigan that defined this offense were, in all respects material to this case, identical. *Compare* Tenn.Code of 1932, § 10927, with Mich.C.L.A. § 750.357. Thus, the acts that the petitioner committed in Michigan, and which led to his conviction under the Michigan statute, necessarily would have supported a conviction of larceny from the person under T.C.A. § 39–4206 as it was in force at that time had they occurred in this

state. The question thus becomes whether "larceny," as that term is used in T.C.A. § 40–2712, includes the offense of larceny from the person under Tennessee law. "Larceny," without further qualification, is a general term encompassing all of the statutory forms of larceny. *See People v. Crane,* 356 Ill. 276, 190 N.E. 355 (1934); *State v. Cabell,* 252 N.W.2d 451 (Iowa 1977). It is apparent from the language of T.C.A. § 40–2801 that the legislature understood the term's use in T.C.A. § 40–2712 to be in this general sense, for after incorporating by reference "larceny" as used in that statute as one of the specified crimes under the habitual criminal act, they expressly excluded petit larceny from that category. Such a proviso would have been unnecessary had they not understood "larceny" as used in T.C.A. § 40–2712 to include all of the statutory forms of that crime. Thus, a conviction for any of these offenses—with the express exception of petit larceny—may serve as one of the specified offenses for the purpose of establishing a defendant's status as an habitual criminal, and the trial judge's instruction to the jury in this case to the effect that the petitioner's conviction for larceny from the person could be employed for that purpose were correct.

The petitioner has also questioned whether his conviction for committing a crime against nature, as proscribed by T.C.A. § 39–707, may be counted as one of the two specified felonies. As we noted previously, T.C.A. § 40–2801 includes by reference the crimes listed in T.C.A. § 40–2712 as ones which may be used for this purpose, and among the crimes set forth in that statute are sodomy and buggery. There is no dispute but that the petitioner's conviction for crime against nature must fall within the definition of one of the two to be considered a specified offense under T.C.A. § 40–2801.

Neither sodomy nor buggery is defined in T.C.A. § 40–2712, or elsewhere in the code. Furthermore, there appears to have been no authoritative determination by the courts of this state as to their respec-

tive meanings as employed in this statute.[1] Therefore, we must look to the common law. *Cf. McNally v. Hill*, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238 (1934). At common law, these two terms do not appear to have been employed with complete consistency.[2] However in our view of this case, only one aspect of their definitions is determinative, and on that aspect there appears to be little disagreement. The consensus of the authorities is that at common law neither sodomy nor buggery included any form of oral-genital sex, but rather, taken together, referred only to anal copulation among humans and to the copulation of a human with a beast. R. M. Perkins, Criminal Law 389–390 (1969). In view of the extreme penalty provided by the habitual criminal act, a conviction for acts outside the strict common law definitions of sodomy and buggery will not be held to be within the meaning of those terms as used in T.C.A. § 40–2712 absent a clear indication that such was the intent of the legislature.[3] *See, e. g., Chadwick v. State*, 201 Tenn. 57, 296 S.W.2d 857 (1956). From this it follows that neither sodomy nor buggery as those terms are used in T.C.A. § 40–2712 is coextensive with the "crime against nature" prohibited by T.C.A. § 39–707, which has been interpreted as including several oral sex acts. *See Stephens v. State*, 489 S.W.2d 542 (Tenn.Cr. App.1973).

■ At trial, the judge instructed the jury to the effect that "crime against nature" and "sodomy" were synonymous, and that the petitioner's conviction for the former could be counted as one of the two specified crimes required under T.C.A. § 40–2801. This instruction was incorrect, and, as the petitioner's conviction for larceny from the person was the only other conviction that was for a specified crime that error was not harmless. As a result, the petitioner must receive a new trial on the question of whether he was an habitual criminal at the time he committed this burglary. At that trial, the judge should instruct the jury that the petitioner's conviction for crime against nature may be considered to be one of the offenses specified under T.C.A. § 40–2801 only if the acts that resulted in his conviction for that offense were such as would have made him guilty of either sodomy or buggery at common law. The trial judge should further in-

1. Beginning with *Fisher v. State*, 197 Tenn. 594, 277 S.W.2d 340 (1955), a number of cases have stated that Tennessee has adopted a broad definition of the term "sodomy." *See, e. g., Stephens v. State*, 489 S.W.2d 542 (Tenn.Cr.App. 1973). *Cf. Rose v. Locke*, 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975). Strictly speaking, however, those statements have been dicta. The statute being construed in the decisions in which the statements appear was T.C.A. § 39–707, which prohibits "crimes against nature," and they were made in the course of providing a definition for that phrase. At no time were the courts called upon to define "sodomy," as it is used in T.C.A. § 40–2712. Thus, it would be more accurate to say that Tennessee has adopted a broad definition of "crime against nature." That definition has been refined over the years so that it now includes virtually every unnatural sexual act. *See, e. g., Sherrill v. State*, 204 Tenn. 427, 321 S.W.2d 811 (1959); *Stephens v. State, supra*. We have no quarrel with that proposition. From it, however, it does not follow that the definition of either "sodomy" or "buggery" is similarly broad.

2. "Buggery" has been held both to include any unnatural sexual act, and to be limited to copulation with animals. *Compare Ausman v. Veal*, 10 Ind. 356 (1858), with *State v. Morrison*, 25 N.J.Super. 534, 96 A.2d 723 (1953) and *Comm. v. Poindexter*, 133 Ky. 720, 118 S.W. 943 (1909). Similarly, "sodomy" has been held both to refer to any unnatural sexual act, and to be limited to anal homosexual copulation. Compare *Smith v. State*, 150 Ark. 265, 234 S.W. 32 (1921), with *Ausman v. Veal, supra*.

3. That the legislature in enacting T.C.A. § 40–2712 intended to use both buggery and sodomy in a limited sense is shown by the inclusion of both in the statute. Obviously, had the broadest meaning of either term been intended, the use of the other would have been superfluous. The derivation of the two statutes is also persuasive. The first progenitor of T.C.A. § 39–707 was the Acts of 1829, ch. 23, § 17, which proscribed sodomy and buggery specifically. Section 71 of the same chapter made both crimes infamous. In the Code of 1858, § 4843, the wording was changed so as to use "crime against nature" in the statute defining the offense. However, the infamy statute continued to use the words "sodomy" and "buggery." Code of 1858, § 3812. The difference in the language supports the inference that the legislature did not consider the acts referred to in the two statutes to be identical.

struct the jury that, for this purpose, "sodomy" is defined as anal copulation among humans, while "buggery" is defined as the copulation of a human with an animal. While, as we noted previously, there is some disagreement among the authorities as to the precise meanings of these terms, the definitions that we have adopted have the advantages that they make the use of neither term redundant, and that, taken together, they embrace the core definitions of the two terms at common law.

The remaining assignments of error raised by the petitioner are without merit, and are overruled. Accordingly, his conviction for burglary is affirmed. His sentencing as an habitual criminal is set aside, and the case is remanded for a new trial on the habitual criminal count of his indictment, consistent with this opinion.

BROCK and HARBISON, JJ., concur.

HENRY, C. J., and FONES, J., concur in part and dissent in part.

HENRY, Chief Justice.

## I.

### CONCURRING

I concur in so much of the majority opinion as holds that "the present offense, the punishment of which the State seeks to enhance, may not be used as one of the convictions necessary to bring the defendant within the definition of an habitual criminal."

I file this concurring opinion because I feel under a form of moral compulsion to confess error in the conclusion reached by this Court in *Pearson v. State*, 521 S.W.2d 225 (Tenn.1975) wherein we unanimously declared:

The third conviction of one of the prescribed felonies is the triggering mechanism which brings the habitual criminal statute into play.

521 S.W.2d at 227

This admittedly erroneous dictum prompted Judge Tatum's holding in the opinion of the Court of Criminal Appeals.

For its inclusion in *Pearson*, as a part of the "prelude to our consideration of the petitioner's double jeopardy claim", 521 S.W.2d at 227, I take full responsibility.

At the time I prepared the opinion in *Pearson*, I was fully aware of the successive holdings in *McCummings v. State*, 175 Tenn. 309, 134 S.W.2d 151 (1939); *Brown v. State*, 186 Tenn. 378, 210 S.W.2d 670 (1948); and *Wright v. State*, 217 Tenn. 85, 394 S.W.2d 883 (1965). However, I was also aware that these cases either did not address the issue or did not analyze the Habitual Criminal Statutes, § 40–2801, et seq., T.C.A.

Under these circumstances I followed the plain language of the statute which is couched in terms of a defendant having been "three (3) times convicted" of the various qualifying offenses, and thereby evincing a strong public policy established by the Legislature that those who have been "three (3) times convicted" should be removed from society as a class of confirmed criminals who are "menace[s] to society and should be confined to prevent the committal of other, and probably more serious, crimes." *McCummings v. State*, 175 Tenn. 309, 311, 134 S.W.2d 151, 152 (1939). Since a construction of this phase of the statutory scheme was not involved in *Pearson*, I had no reason to consider the matter in depth.

No reported decision affords any guidance as to the reason that a third conviction will not trigger the habitual criminal statutes. The majority opinion sheds no light upon the matter. It contains this unfortunate statement:

Clearly, then, to bring the defendant within the ambit of the statute, the state must show that he was an habitual criminal *at the time he committed the principal offense.* (Emphasis in original).

Habitual criminal status does not attach until a jury has so determined. What the state actually must show is that he has been convicted of three qualifying offenses prior to the time of the commission of the triggering offense and that those convictions have become final. The rationale of this statement appears *infra*.

I look to the cases cited by the majority and as set out hereinabove.

In *McCummings*, the issue is not discussed. The question there was one of notice. The defendant first learned that he was going to be proceeded against as an habitual criminal during the voir dire examination of the jury. The indictment only charged the commission of the substantive offense, with no reference to the habitual offender statutes. This Court held that such a practice did not jeopardize the accused and upheld the imposition of the habitual criminal status. The Court suggested, however, "the practice of giving him notice in the indictment, or otherwise, as early as possible." 175 Tenn. at 313–14, 134 S.W.2d at 153. *State v. Gore*, 182 Tenn. 94, 184 S.W.2d 366 (1945), was not cited in the majority opinion but specifically supports the four conviction rule. There the Court held to the four conviction requirement because of the State's concession (182 Tenn. at 97, 184 S.W.2d 366) and did not address the issue. The principal complaints made by the defendant were that (1) the indictment did not alert him that the Habitual Criminal Statutes would be invoked and (2) that he was not given notice that he would be proceeded against under this law until so short a time before his trial that he had no opportunity to prepare his defense. The Court rejected these insistences and affirmed.

In *Brown, supra*, the Court simply followed *McCummings* and *Grandstaff*. There the indictment contained a count on the Habitual Criminal Act. The Court held it to be "surplusage" because there was no requirement that he be charged with habitual criminality in the indictment. The Court held that the statute itself is notice.

It should be pointed out that the principal holdings of these three cases were obliterated by the enactment of Section 11863.5 of the 1950 Supplement to the Official Code, which modified Section 5, of the Acts of

1939 (See Sec. 40–2803, T.C.A.) so as to require the inclusion of the habitual criminal accusation in the indictment.

*Wright, supra*, the remaining case cited in the majority opinion, simply holds that four convictions were sufficient, without any analysis of the issue. The same is true of *Beeler v. State*, 206 Tenn. 160, 332 S.W.2d 203 (1959).

Thus, it will be seen that as of this time our courts have not made even a simple analysis of the issue here involved.

In the face of at least a superficial legislative intent that three convictions will trigger the application of the Habitual Criminal Act, it becomes the duty of the Court to uphold the act and apply it in accordance with the plain provisions of the statute, unless other critical considerations force a contrary construction.

Here such a consideration is present. The only reason that the third conviction may not trigger the application of the statute is that it *has not become final*. It may be set aside by the trial judge or may be reversed on appeal. In either event the status of habitual criminality would be obliterated. The word "convicted" used in our Habitual Criminal Act must be construed to denote a final conviction. See Anno., 5 A.L.R.2d 1808 (1949).[1]

A criminal defendant whose convictions of three qualifying offenses have become final may be proceeded against as an habitual criminal. His indictment need not await the finality of the qualifying convictions but the final imposition of the status may not be made until all underlying convictions have become final. But the statutory scheme contemplates a trial of the habitual criminal charge at the same time as that of the underlying felony.

The trial is bifurcated, with the jury first determining guilt of the underlying felony before considering the habitual criminal count. *Harrison v. State*, 217 Tenn. 31, 394

---

1. This holding is not at variance with the opinion of the Court of Criminal Appeals in *Beard v. State*, 542 S.W.2d 389 (Tenn.Cr.App.1976). There the Court was dealing with convictions that had become final in that they had been affirmed by the Court of Criminal Appeals and certiorari was not petitioned for.

S.W.2d 713 (1965).[2] Upon the rendition of the verdict of guilty, the same jury considers the habitual criminal count. *Beeler v. State, supra.*

Thus, while the third final conviction forms the basis for the invocation of the Habitual Criminal Act, the fourth felony actually triggers its application and serves as the carrying vehicle to bring the habitual criminal charge before the Court.

## II.

I respectfully dissent from the remainder of the opinion.

The following tabulation shows, in chronological order, petitioner's pertinent criminal history:

| Date | Offense | State |
|------|---------|-------|
| July 13, 1961 | Felonious escape | Tennessee |
| October 11, 1961 | Felonious escape | " |
| September 15, 1964 | Crime against nature | " |
| March 6, 1970 | Larceny from the person | Michigan |
| November 14, 1973 | Attempted breaking and entering | " |

In the present case, the underlying felony conviction was for first degree burglary.

I agree with the conclusion reached in the majority opinion that larceny from the person is a qualifying offense.

I disagree with and dissent from so much of the majority opinion as remands on the crime against nature question.

Judge Tatum, writing for the majority in the Court of Criminal Appeals, held that a crime against nature is a scheduled crime under the Habitual Criminal Act. His reasoning:

> The term "Crime Against Nature" is an euphemism for the particular acts that constitute sodomy at common law. (citing *Stephens* and *Locke, supra*) Our courts, in effect, have held the terms "Crime Against Nature" and "Sodomy" to be synonymous.

I agree with this conclusion.

Section 39–707, T.C.A. denounces "[c]rimes against nature, either with man-

kind or any beast." This "expression is a euphemism for the particular acts that constitute the offense of sodomy at common law" and "means the common law offense of sodomy." *Stephens v. State,* 489 S.W.2d 542, 543 (Tenn.Cr.App.1972). It includes cunnilingus, *Young v. State,* 531 S.W.2d 560 (Tenn.1975); *Locke v. State,* 501 S.W.2d 826 (Tenn.Cr.App.1973), and fellatio, *Young v. State, supra*; "sodomy per anus and per os", *Cook v. State,* 506 S.W.2d 955, 958 (Tenn.Cr.App.1973); and "all unnatural copulation with mankind or a beast, including sodomy." *Sherrill v. State,* 204 Tenn. 427, 429, 321 S.W.2d 811, 812 (1959), quoting *State v. Cyr,* 135 Me. 513, 198 A. 743 (1938).

These definitions embrace all known forms of sodomy. Thus, under Tennessee law, sodomy is a crime against nature embracing carnal copulation between man and beast and all forms of unnatural, abnormal and deviant copulation between human beings, to include cunnilingus, fellatio and sodomy per anus.

As stated in Johnson, *Crimes Against Nature in Tennessee: Out of the Dark and Into the Light,* 5 Mem.St.L.Rev. 319, 329 (1975):

> Most statutes prohibit acts that are referred to variously as sodomy, buggery, or crimes against nature. For the purpose of statutory law, these terms are equivalent; they are intended to reach the same kind of conduct.

This is the devolution of our law. It may not strictly accord with the common law, but it is too late now for us to overrule this established decisional law by attributing to the legislature an intent to use technically precise phraseology as opposed to words that have come to have a common meaning. In my view the legislature intended that all forms of crimes against nature be embraced within the term "sodomy".

I would affirm the judgment of the Court of Criminal Appeals in respects, the re-

---

2. *Harrison* further holds that "[i]f the jury finds not guilty of the present crime then the habitual criminal count is not at issue." 217 Tenn. at 34, 394 S.W.2d at 714. This is a correct con-

clusion because the fourth offense charged in the indictment is the carrying vehicle and without a conviction of the fourth offense there is no punishment to enhance.

quirements of the statute having been satisfied. I am authorized to state that Mr. Justice FONES concurs in Section II of this opinion.