**STATE of Tennessee, Plaintiff–Appellee,**

v.

**Roy L. MOUNCE, Defendant–Appellant.**

Supreme Court of Tennessee,
at Knoxville.

Aug. 2, 1993.

Charles W. Burson, Atty. Gen. and Reporter, Rebecca L. Gundt, Asst. Atty. Gen., Nashville, for plaintiff-appellee.

Andrew N. Hall, Wartburg, for defendant-appellant.

## OPINION

DROWOTA, Justice.

The Defendant, Roy L. Mounce, has appealed from the judgments of the lower courts holding that he can be retried for driving while under the influence of an intoxicant after the trial court declared a mistrial under the unique circumstances described below. We granted the Defendant's Rule 11 Application to decide whether a subsequent prosecution for the same charge of driving while under the influence is prohibited by the double jeopardy clauses of the state and federal constitutions.

The Defendant was indicted in Morgan County for driving while under the influence of an intoxicant in violation of T.C.A. § 55–10–401. His case was tried before a 12–person jury which, after deliberating, reported through its foreperson that it had reached a verdict of guilty and assessed a fine of $250.00. When the trial judge polled the jury by asking for a show of hands in favor of guilt, only eight jurors raised their hands. Although the jury was split eight to four in favor of guilt, they were unanimous in their approval of the fine. Upon hearing of the split vote, the trial court, *sua sponte*, declared a mistrial and dismissed the jury. The Defendant did not request or object to the termination of the trial.

The State later sought to prosecute the Defendant for the same offense of driving while under the influence. The Defendant filed a motion to dismiss based upon double jeopardy grounds. At the hearing on the motion to dismiss, the trial court, in reference to the mistrial, stated:

> And I will have to say that [the jury] certainly did misunderstand, since twelve of them voted for a fine, and only eight of them voted for guilty. But in the Court's opinion, in this situation it would have—even though there were four people that had originally felt that this defendant was questionable, whether or not he was guilty, and felt that he should have been fined, the Court was of the

opinion at the time that had I sent them back in, it would have been an automatic finding of guilty, and therefore the Court declared a mistrial. If the jury had reported that they had been hung, then the Court would have had some basis to have sent them back to work on.

Thus, the motion to dismiss was denied by the trial court. Approximately four months later (nine months after the mistrial was declared), the trial judge filed an order, which is apparently inconsistent with his assessment of the situation on the day of the trial, casting the case as one in which the jury was "hopelessly deadlocked and further deliberation [would have been] futile." This order was signed and entered after the trial court granted the Defendant's request for an interlocutory appeal to the Court of Criminal Appeals.

The Court of Criminal Appeals, with Judge Tipton dissenting, affirmed the trial court. The majority found as follows:

The unique report of the jury in this case gives no indication of what likely result would have occurred had the jury been returned to deliberate further. Obviously, the numerical weight was against the appellant, and on punishment of the appellant the jury was unanimous. It would have probably been better had the trial judge given the jury further instruction and had them continue to deliberate. However, we do not believe, under the unique circumstances of this case, that the trial judge has abused his discretion in ordering a retrial on this matter.

We are further persuaded that the ruling is correct in the face of a record which does not show the appellant raised any objection to the action of the trial judge in declaring a mistrial. When the appellant stands silent at a time when he could have objected to the action of the trial court, we conclude he has ac-

quiesced in the action taken by the trial judge.

The intermediate court thus held that the Defendant could be tried again without violating double jeopardy principles.

 The law is settled that the double jeopardy clauses of the state and federal constitutions protect against (1) a second prosecution for the same offense after conviction, (2) a second prosecution for the same offense after an acquittal and, (3) multiple punishments for the same offense. *State v. Maupin,* 859 S.W.2d 313, 316 (Tenn.1993); *State v. Griffith,* 787 S.W.2d 340, 341 (Tenn.1990). There are exceptions, however, to the prohibition against double jeopardy. For instance, retrial may be permitted if the defendant consented to the termination of the proceeding at issue. *United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *State v. Knight,* 616 S.W.2d 593, 596 (Tenn.1981); *Seiber v. State,* 542 S.W.2d 381, 385 (Tenn. Crim.App.1976). "In such a case the accused has deliberately elected to forego his right to have guilt or innocence determined by the first trier of fact." *Knight,* 616 S.W.2d at 596.

 Additionally, a retrial is permitted where there is a "manifest necessity" for the declaration of the mistrial, regardless of the defendant's consent or objection. *United States v. Dinitz,* 424 U.S. 600, 606, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267, 273 (1976); *Arnold v. State,* 563 S.W.2d 792, 794 (Tenn.Crim.App.1978). "If it appears that some matter has occurred which would prevent an impartial verdict from being reached, a mistrial may be declared and a claim of double jeopardy would not prevail on a subsequent trial." *Arnold,* 563 S.W.2d at 794 (citing *Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973)).[1] The impossibility of a jury reaching a verdict has long been recognized as a sufficient reason for declaring

1. The circumstances under which a mistrial may be declared has been explained more fully as follows: "The court may discharge the jury without working an acquittal of the accused in any case where the ends of justice, under the circumstances, would otherwise be defeated, or where the circumstances show that a fair and unbiased trial could not be had, or where any unforeseen emergency, contingency, or happening after the empaneling of the jury prevents the trial from going forward according to orderly and established legal procedure." *Jones v. State,* 218 Tenn. 378, 403 S.W.2d 750, 753 (1966).

a mistrial. *Jones v. State*, 218 Tenn. 378, 403 S.W.2d 750, 754 (1966); *State v. Freeman*, 669 S.W.2d 688, 692 (Tenn.Crim.App. 1983); *State v. Freeman*, 669 S.W.2d 688, 692 (Tenn.Crim.App.1983); *Arnold*, 563 S.W.2d at 794. When the mistrial is declared because of a manifest necessity, double jeopardy is not violated when the defendant is retried, even if he objected to the mistrial. *Dinitz*, 96 S.Ct. at 1079; *Freeman*, 669 S.W.2d at 692; *Donaldson v. Rose*, 525 S.W.2d 853, 855 (Tenn.Crim. App.1975). The granting of a mistrial is within the sound discretion of the trial court, which will not be disturbed on appeal absent a finding of abuse of discretion. *Jones*, 403 S.W.2d at 753; *Freeman*, 669 S.W.2d at 692; *State v. Compton*, 642 S.W.2d 745, 746 (Tenn.Crim.App.1982). In making this determination, "no abstract formula should be mechanically applied and all circumstances should be taken into account." *Jones*, 403 S.W.2d at 753.

■ Applying the foregoing discussion to the facts in this case, we are persuaded that the declaration of the mistrial under the circumstances presented did not constitute a manifest necessity for purposes of double jeopardy. The jury had returned a verdict which obviously reflected confusion. As the trial court observed, the jury "certainly did misunderstand, since twelve of them voted for a fine, and only eight of them voted for guilty." Upon hearing of the split vote, the trial court summarily declared a mistrial *sua sponte*. The trial court had the power and the duty to return the jury to the jury room with instructions that their verdict, whatever it might be, had to be unanimous. *Gwinn v. State*, 595 S.W.2d 832, 835 (Tenn.Crim.App.1979) ("When a jury returns an incorrect or imperfect verdict, the trial court has both the power and the duty to send them back to the jury room with directions to amend the verdict and to put it in proper form."); *Meade v. State*, 530 S.W.2d 784, 787 (Tenn. Crim.App.1975). The alternative was to ascertain whether the jury's verdict represented a hopeless deadlock. There is noth-

ing in the record to suggest that any attempt was made by the trial court to determine if instructions could be clarified and a valid verdict obtained, or whether the jury was hung.[2] It is only when there is no feasible and just alternative to halting the proceedings that a manifest necessity is shown. *State v. Knight*, 616 S.W.2d at 596. Even the intermediate court's majority opinion acknowledges that the record gives no indication of what result would have occurred had the jury been returned to deliberate further and that it "would have probably been better had the trial judge given the jury further instructions and had them continue to deliberate." Thus, the fact that the trial judge had available the preferred alternative of instructing the jury further and having them continue to deliberate for the purpose of returning a consistent verdict precludes the finding of a manifest necessity to summarily conclude the trial. In the event that the jury had been sent back for further deliberations, and the four "errant" jurors were not swayed by the majority, the resulting hung jury could then have been discharged and a retrial allowed since a deadlocked jury constitutes a manifest necessity justifying a mistrial. *Richardson v. United States*, 468 U.S. 317, 323–24, 104 S.Ct. 3081, 3085, 82 L.Ed.2d 242, 250 (1984); *Arizona v. Washington*, 434 U.S. 497, 509, 98 S.Ct. 824, 832, 54 L.Ed.2d 717, 730 (1978); *State v. Seagroves*, 691 S.W.2d 537, 540 (Tenn.1985). In any event, the State's assertion that the jury could not reach a verdict in this case is merely speculative given this record.

■ As stated previously, a retrial is not barred by double jeopardy if a defendant consents to the termination of the trial, notwithstanding the lack of a manifest necessity for doing so. *Knight*, 616 S.W.2d at 596. The majority of the intermediate court found that when a defendant stands silent at a time when he could have objected to the action taken by the trial court, he has acquiesced in that course of

**2.** Unfortunately, the record on appeal does not contain a transcript of what was actually said

and done at the trial.

action. Obviously, the rationale for requiring an objection to a mistake is that it gives the trial judge an opportunity to cure a situation that one or both parties perceive to be in error. A party ought not be permitted to stand silently by while the trial court commits an error in procedure, and then later rely on that error when it is to his advantage to do so. This is why there is precedent dating back to the last century holding that if an accused fails to object to the jury's discharge upon a defective verdict, he is viewed as having waived the right not to be put on trial again. *State v. Ragsdale*, 78 Tenn. 671, 672 (1882); *see also, Waddle v. State*, 112 Tenn. 556, 82 S.W. 827 (1904) (absence of an objection to the discharge of the jury equates to a waiver). We thus hold that when a defendant chooses not to object to the mistrial and give the trial court an opportunity to correct the error, consent may be inferred and, therefore, double jeopardy will not bar a subsequent prosecution.

■ It is here that the absence of a transcript of the trial is particularly troubling. The circumstances surrounding the Defendant's silence and failure to object are unknown and unknowable based on the record before us. Whether the Defendant even had an opportunity at all to object and failed to do so prior to the trial court's *sua sponte* ordered mistrial is an open question. We cannot indulge in the assumption that he had such an opportunity and failed to take advantage of it.

In view of the foregoing, the judgments of the trial court and Court of Criminal Appeals are reversed. Costs are taxed against the Appellee.

REID, C.J., and O'BRIEN, DAUGHTREY and ANDERSON, JJ., concur.