# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
September 25, 2001 Session

## STATE OF TENNESSEE v. ELESA D. McDANIELS

**Direct Appeal from the Circuit Court for Rhea County**
**No. 15471      J. Curtis Smith, Judge**

---

**No. E2000-02790-CCA-R3-CD**
**November 1, 2001**

---

The defendant was convicted of aggravated robbery and sentenced to eight years imprisonment. In this appeal, the defendant alleges (1) the evidence was insufficient to sustain her conviction, and (2) the trial court erroneously failed to charge simple robbery as a lesser-included offense of aggravated robbery. We conclude that the evidence was sufficient to support the conviction, and the defendant affirmatively acquiesced in the trial court's failure to charge simple robbery. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ALAN E. GLENN, JJ., joined.

J. Shannon Garrison, Dayton, Tennessee, for the appellant, Elesa D. McDaniels.

Paul G. Summers, Attorney General and Reporter; Patricia C. Kussmann, Assistant Attorney General; James Michael Taylor, District Attorney General; and Steven H. Strain, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### TRIAL TESTIMONY

The defendant and Bruce Cox were living together in November 1999. The defendant, accompanied by Cox, drove to a location near Wal-Mart on the evening of November 6, 1999, and Cox exited the vehicle.

Justin Cornett, a Wal-Mart employee, testified he went to the back door of Wal-Mart at approximately 9:00 p.m. on November 6th. He exited Wal-Mart and saw a man, later identified as Cox, crouched under a trailer. When Cornett turned to get help, Cox, wearing a ski mask and

holding a green duffel bag and handgun, jumped him. Cox placed the gun barrel to the back of Cornett's head, threatened to shoot him, and ordered him inside the store. Cox led Cornett at gunpoint to the cash office in the back of the store and ordered Cornett to break down the door. Cox placed approximately $7000 in the duffel bag and fled.

Frances Smith, a Wal-Mart employee, testified Cox entered the store with a gun on Cornett's head, and Cox got the money from the cash office.

Melissa Roberts, a Wal-Mart manager, testified the defendant was employed by Wal-Mart in May and June of 1999 as a cashier and layaway clerk. She further stated that layaway was located three doors from the cash office, and the defendant, as an employee, would have knowledge of the safe's location.

Chris Sneed, a Dayton Police Department Investigator, executed a search warrant on November 12, 1999, on the residence shared by defendant and Cox. The search led to the recovery of a bag from inside the washing machine containing $3700, consisting only of denominations of one's and five's. Officers also seized 27 five dollar bills from the defendant's purse, 14 five dollar bills from under the mattress, and several one and five dollar bills in various articles of clothing.

Sneed informed the defendant of her <u>Miranda</u> rights and interviewed her. The defendant stated Cox informed her "[a] couple of months ago . . . he was going to rob Wal-Mart" and mentioned it again a couple of days before the robbery. She further stated that on November 6, 1999, she and Cox left their residence to "ride around" because they were arguing. They stopped at the McDonald's adjacent to Wal-Mart, and she went inside for a drink. She said she returned with her drink, and the defendant was gone. After ten minutes, he returned. The defendant stated Cox gave her $300 a few days later to pay bills.

Subsequently, the defendant revised her statement and admitted discussing the robbery with Cox on the night of the crime. She stated Cox informed her "he was going to hit Wal-Mart so I needed to take him to McDonald's." She further stated she did so; he left and later returned; and she drove back home. Two days later Cox brought in the bag with approximately $7000 in it, and they counted it on the bed.

A few days later, the defendant informed Sneed some of the stolen money was deposited in a safe deposit box. Accordingly, Sneed arranged for the defendant to be transported to the bank. The defendant then opened the safe deposit box, which contained 500 one dollar bills and 400 five dollar bills.

Cox testified he and the defendant were "riding around" on November 6th because they were arguing and did not want to argue at home in front of the children. Although he conceded he had previously threatened to rob Wal-Mart, he said they did not discuss it while driving. He insisted the

defendant had no idea he was going to rob Wal-Mart that night.  Cox further stated that when he returned to the vehicle at McDonald's, he hid the bag of money under his coat until he stuffed it under his seat, and he merely stated to the defendant, "let's go," not informing her of the robbery.

Cox stated the defendant first learned of the robbery when he instructed her to pull the vehicle over in a rural area so he could "throw some stuff" out of the car. At that point, the defendant attempted to get out of the vehicle, but Cox grabbed her arm and ordered her to take him home. Once home, Cox stated he pushed her against the wall and told her "she wouldn't never [sic] leave me, [and] if [he] couldn't have her, nobody was." A few days later, Cox gave her some money to pay bills and instructed her to put the $2500 in a safe deposit box.

On cross-examination, the state introduced Cox's prior signed statement.  Therein, Cox stated he and the defendant planned on robbing Wal-Mart on Friday, November 5th, but decided to wait until the following day.  He further stated the defendant let him out in the north end of the shopping center parking lot and then parked at McDonald's.  Cox testified he did not recall making the statement, and he described his weapon as a "toy cap pistol."

The defendant testified Cox lost his job and began "jok[ing]" about robbing Wal-Mart.  Then, she instructed him not to do it when she realized he was not joking.  She testified that on November 6th, Cox did not mention his intention to rob Wal-Mart.  She further stated that she stopped the vehicle at McDonald's so she could use the restroom and get food.  When she returned to the vehicle, Cox was gone.  She stated Cox returned within three minutes and merely stated he had been to Wal-Mart; she first learned he had robbed Wal-Mart when he instructed her to pull the vehicle over and threw items out of the vehicle; and Cox assaulted her, leaving bruises, and would not let her leave him.

She stated when she was arrested, officers cursed and yelled at her and threatened to send her son to jail; the statement officers took from her was not accurate; and she had no chance to review her statement.  She admitted that she was the person who washed the clothing in the house, but said she was unaware the money was hidden inside the washing machine.  She further claimed there were only two or three $5 bills in her purse; she was unaware the safe was located in the back office of Wal-Mart; and she only worked as a cashier and not in layaway.

Kirk McDaniels, the son of Cox and the defendant, testified there was conflict over finances between the defendant and Cox prior to the robbery.  He further testified Cox and the defendant left the residence on November 6th, and after they returned, he saw Cox pin the defendant against the wall and threaten her.  On cross-examination, the state introduced a prior statement of McDaniels, which he denied making, where McDaniels told officers that "[o]n November the 6th, 1999, [Cox] pulled me over and told me he was going to rob Wal-Mart . . . ."

The jury convicted the defendant of aggravated robbery under the theory of criminal responsibility for the conduct of Cox.

# I. SUFFICIENCY OF THE EVIDENCE

The defendant contends the evidence was insufficient to sustain her conviction for aggravated robbery. We respectfully disagree.

## A. Standard of Review

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1,18 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995).

The trier of fact, not this court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence. *Id.* In State v. Grace, the Tennessee Supreme Court stated, "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973).

## B. Analysis

The defendant was convicted based upon her criminal responsibility for the conduct of Cox. Guilt based upon criminal responsibility is established when a person acts "with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, [and] solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-401(2).

The defendant alleges the evidence was insufficient because the proof established she was unaware Cox was going to commit the robbery prior to its occurrence, and she only became aware of it after she drove him away from the crime scene. Although Cox testified at trial that the defendant had no prior knowledge of the robbery, he was impeached by his prior written statement. In Cox's written statement to police, Cox stated he and the defendant planned to rob Wal-Mart on Friday, November 5th, but they decided to wait until November 6th; the defendant let him out in the north end of the shopping center parking lot and then parked at McDonald's; and the defendant drove

back home after he got back in the car. Furthermore, the defendant in her revised statement to Investigator Sneed admitted Cox told her "he was going to hit Wal-Mart so I needed to take him to McDonald's." Although she testified to the contrary at trial, it was within the jury's prerogative to reject her trial testimony.

Additionally, the defendant contends the evidence was insufficient because the evidence failed to prove the property was "taken from the person of Jason Cornett," as alleged in the indictment. Although the evidence established the money was actually taken by Cox from the cash office after Cornett broke down the door, this is sufficient to constitute a taking from the person. A taking "in the presence of the party robbed" is a constructive taking sufficient to satisfy this element of robbery. State v. Edwards, 868 S.W.2d 682, 700 (Tenn. Crim. App. 1993).

The evidence was sufficient to support the guilty finding.

## II. LESSER-INCLUDED OFFENSE

The trial court instructed the jury on the charged offense of aggravated robbery and the lesser-included offense of facilitation of aggravated robbery. The defendant contends the trial court erroneously neglected to instruct the jury on simple robbery as a lesser-included offense of aggravated robbery. For reasons set forth subsequently, we disagree.

### A. Burns

Aggravated robbery is distinguished from robbery only by an additional showing that the robbery was accomplished with a deadly weapon or, in the alternative, by a showing that the victim suffered serious bodily injury. *See* Tenn. Code Ann. §§ 39-13-401(a), -402(a). Since all of the statutory elements of robbery are included within the statutory elements of aggravated robbery, it is a lesser-included offense of aggravated robbery under part (a) of Burns. State v. Burns, 6 S.W.3d 453, 466 (Tenn. 1999).

However, our analysis does not conclude there. As recently stated by the Tennessee Supreme Court in State v. Ely, 48 S.W.3d 710, 722 (Tenn. 2001), determination of whether a charge should be included in jury instructions as a lesser-included offense is a two-part inquiry. First, it must be determined if the offense meets the definition of a lesser-included offense as described in Burns. *Id.* Second, the charge must be justified by the evidence. *Id.*; Burns, 6 S.W.3d at 467. This second step requires that we determine (1) whether there is evidence that "reasonable minds" could accept to establish the lesser-included offense, and (2) whether the evidence is "legally sufficient" to support a conviction for the lesser-included offense. Ely, 48 S.W.3d at 722; Burns, 6 S.W.3d at 469. The evidence must be viewed liberally in a light favoring the existence of the lesser-included offense without making any judgments as to credibility of the evidence. Burns, 6 S.W.3d at 469.

## B. Basis for Charge

Cox testified the gun he used during the incident was a "toy cap pistol." However, even if the gun was a toy, the robbery is still aggravated provided the victim was led to reasonably believe it was a deadly weapon. *See* Tenn. Code Ann. § 39-13-402(a)(1) (aggravated robbery accomplished by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon). There is no indication in the record that the Wal-Mart employees thought the gun was a toy. Nevertheless, the defendant argues that Cox's testimony was sufficient to present an issue for the jury under Burns. Regardless, we need not determine the issue on this basis.

## C. Waiver

The trial court discussed the jury charge with counsel prior to argument. *See* Tenn. R. Crim. P. 30(a). The trial court informed counsel of its intention to charge aggravated robbery and the lesser-included offense of facilitation of aggravated robbery. The trial court stated it saw no reason to instruct on simple robbery and noted that even "a toy weapon according to Mr. Cox's testimony" would still be considered a deadly weapon under the evidence. The trial court then said, "[t]he state indicates to me that they think that is appropriate, and Mr. Garrison [defense counsel] says he thinks that's appropriate so any other comments on the record for the state?" Defense counsel voiced no objection and made no request for an instruction on simple robbery. Furthermore, after the jury charge and after being asked by the trial court if there were any "requests or objections," defense counsel responded, "No, sir." The failure of the trial court to charge simple robbery was first raised in the motion for new trial.

We recognize that Tenn. Code Ann. § 40-18-110(a) requires a trial court to charge all lesser-included offenses even "without any request on the part of the defense to do so." Thus, the requirement to charge lesser-included offenses is not contingent upon a request by the defendant to do so. State v. Smiley, 38 S.W.3d 521, 524 (Tenn. 2001).

Nevertheless, our appellate courts have consistently recognized that a party cannot take advantage of errors which he or she committed, invited or induced the trial court to commit. Adkins v. State, 911 S.W.2d 334, 346 (Tenn. Crim. App. 1994); State v. Banes, 874 S.W.2d 73, 82 (Tenn. Crim. App. 1993). In discussing the failure of a defendant to object to a mistrial, our supreme court stated:

> Obviously, the rationale for requiring an objection to a mistake is that it gives the trial judge an opportunity to cure a situation that one or both parties perceive to be in error. A party ought not be permitted to stand silently by while the trial court commits an error in procedure, and then later rely on that error when it is to his advantage to do so.

State v. Mounce, 859 S.W.2d 319, 323 (Tenn. 1993).

Although we do not know the motivation of the defendant or her counsel in this case, we do recognize that a defendant could theoretically "sandbag" the trial court by intentionally not requesting a lesser-included offense and then raise the issue for the first time in a motion for new trial. We do know in this case that defendant affirmatively acquiesced in the failure to charge simple robbery as a lesser-included offense. She then took an inconsistent position in her motion for new trial and in this court. Ordinarily, relief should not be afforded to a party who is responsible for, or fails to take action to prevent, an error. Tenn. R. App. P. 36(a). Thus, the issue is waived.

We further conclude the plain error doctrine should not apply in this case. This court considers five factors in making this determination:

> "(a) the record must clearly establish what occurred in the trial court;
> (b) a clear and unequivocal rule of law must have been breached; (c)
> a substantial right of the accused must have been adversely affected;
> (d) the accused did not waive the issue for tactical reasons; and (e)
> consideration of the error is 'necessary to do substantial justice.'"

State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000) (adopting and quoting from State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). The plain error doctrine is inapplicable when there is a deliberate choice to waive an objection. *Id.* at 283. Otherwise, defense counsel would be encouraged to "gamble for a favorable verdict, and should the verdict be unfavorable, resort to appeal on errors which might have been obviated on objection." *Id.* (citing United States v. Campbell, 419 F.2d 1144, 1145 (5th Cir. 1969)).

This issue is without merit.

## CONCLUSION

We affirm the judgment of the trial court.

_____
JOE G. RILEY, JUDGE