# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### December 10, 2003 Session

## STATE OF TENNESSEE v. DEJI A. OGUNDIYA

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2000-B-676     Carol Soloman, Judge**

_____

**No. M2002-03099-CCA-R3-CD - Filed February 19, 2004**

_____

After a mistrial in August of 2001, the Defendant, Deji Ogundiya, was retried and convicted by a jury of three counts of sexual battery. In this appeal, the Defendant raises several issues, including whether the trial court erred by failing to charge misdemeanor assault as a lesser-included offense of sexual battery. The State concedes that the trial court so erred. We agree that the trial court committed reversible error by failing to charge the jury with the lesser-included offense. Therefore, the Defendant's convictions are reversed and the case is remanded for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Reversed, Remanded**

DAVID H. WELLES, J., delivered the opinion of the court, in which DAVID G. HAYES and ALAN E. GLENN, JJ., joined.

David L. Raybin, Nashville, Tennessee, for the appellant, Deji A. Ogundiya.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Victor S. Johnson, District Attorney General; and Shelli Neal, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Defendant in this case is an oral surgeon. On April 1, 1999, Latasha Frazier, the victim, went to the Defendant's office because her dentist told her that she needed to have her wisdom teeth removed. The Defendant examined Ms. Frazier's mouth and confirmed that she needed to have her wisdom teeth extracted. On July 20, 1999, she returned to the Defendant's office for the surgery. Her boyfriend, Tyson Bailey, accompanied her. Nothing out of the ordinary happened on these first two visits.

The victim testified that during the night after she had her wisdom teeth removed, the Defendant called her perhaps three times to "see if [she] was okay and if [she] needed something." On July 27, 1999, Ms. Frazier returned to the Defendant's office because food was getting lodged in the sockets where her teeth had been. The Defendant gave her a syringe with which she could flush out the sockets. Ms. Frazier testified that, as the Defendant was showing her how to use the syringe, "he was brushing against [her] breast." She "slid down in the chair" to avoid him touching her in this manner. No one else was in the examination room at that time. The Defendant "brushed up against" her again as she was leaving. She said that the way he rubbed against her made her feel uncomfortable.

On August 3, 1999, Ms. Frazier had a follow-up appointment with the Defendant to make sure that she was healing properly. After examining her mouth, the Defendant told her that she would not need to return. However, he suggested that they have lunch together and told her that he would visit her at the service station where she worked.

On September 8, 1999, Ms. Frazier returned to the Defendant's office to have a cyst removed. A dental assistant applied numbing cream to Ms. Frazier's gum, after which Ms. Frazier went to the sink to rinse her mouth. While she was at the sink, Ms. Frasier said the Defendant approached her from the rear and pulled her close to him with his hands on her breasts. As he did this, the Defendant was "talking and smiling." The Defendant finally let go of Ms. Frazier and said that he would write her a note to excuse her from work. When the Defendant returned with the note, he "slipped his hand up the back end of [her] shirt" and massaged her side. She said the Defendant then hugged her and leaned back so she could feel his erect penis pressing against her stomach. During these events, no one else was in the room, and Ms. Frazier testified that she felt uncomfortable and unsafe.

Ms. Frazier's older sister, Mildred Frazier Capers, testified that she called the Defendant and confronted him about the way he had touched her sister. The Defendant responded that he was only trying to calm Ms. Frazier down, and "it wasn't like that." The Defendant did not deny touching Ms. Frazier. When Ms. Frazier came on the line, the Defendant told her that he was merely trying to calm her down because she was nervous about the procedure.

Ms. Frazier's mother, Velma Jane Sneed, and Ms. Frazier's boyfriend, Tyson Bailey, both testified that Ms. Frazier was nervous about going to the Defendant's office. She was upset and did not feel safe. However, when Mr. Bailey accompanied her to have her wisdom teeth extracted, nothing inappropriate occurred.

Detective Keith Sutherland of the adult sexual abuse unit of the Metro Nashville Police Department testified that he investigated Ms. Frazier's accusations against the Defendant. Detective Sutherland orchestrated a "controlled telephone call," which involves the complainant calling the suspect while the police officers listen to and record the call. During the phone call between Ms. Frazier and the Defendant, the Defendant "admitted to having contact with her to help calm her down." He also specifically admitted to hugging her, but he "denied having any contact in a sexual manner."

Sylvia Wilcox works as an assistant in the Defendant's office. She explained that it was office policy for the Defendant to telephone patients on the evening after a procedure to make sure everything was okay. She testified that she was present in the exam room on July 27, when the Defendant was supposed to have "brushed" Ms. Frazier's breasts as he was demonstrating how to use the syringe. She stated that nothing inappropriate happened. She was also present when Ms. Frazier came to the Defendant's office to have the cyst removed, but she saw no inappropriate behavior on that date.

The jury found the Defendant guilty of three counts of sexual battery. After the trial court denied the Defendant's motion for a new trial, this appeal followed. The Defendant's first issue on appeal is whether the trial court committed reversible error by failing to charge Class B misdemeanor assault as a lesser-included offense of sexual battery. The State concedes that this was reversible error, and we agree.

Trial courts are under a duty to "'instruct the jury on all lesser-included offenses if the evidence introduced at trial is legally sufficient to support a conviction for the lesser offense.'" State v. Burns, 6 S.W.3d 453, 464 (Tenn. 1999) (quoting State v. Langford, 994 S.W.2d 126, 128 (Tenn. 1999)). In Burns, our Supreme Court adopted a new, three-part test for determining whether an offense is a lesser-included offense. See 6 S.W.3d at 466-67. Under the new test, which was largely derived from the Model Penal Code, an offense is a lesser included offense if:

> (a) all of its statutory elements are included within the statutory elements of the offense charged; or
> (b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing
> (1) a different mental state indicating a lesser kind of culpability; and/or
> (2) a less serious harm or risk of harm to the same person, property or public interest; or
> (c) it consists of
> (1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
> (2) an attempt to commit the offense charged or an offense that otherwise meets the definition or lesser-included offense in part (a) or (b); or
> (3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

Id.

In this case, the Defendant argues that simple assault is a lesser-included offense of sexual battery.

> Sexual battery is unlawful sexual contact with a victim by the defendant . . . accompanied by any of the following circumstances:

(1) Force or coercion is used to accomplish the act;
(2) The sexual contact is accomplished without the consent of the victim and the defendant knows or has reason to know at the time of the contact that the victim did not consent;
(3) The defendant knows or has reason to know that the victim is mentally defective, mentally incapacitated or physically helpless; or
(4) The sexual contact is accomplished by fraud.

Tenn. Code Ann. § 39-13-505(a). A Class B misdemeanor assault is committed when one "[i]ntentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative." Id. § 39-13-101(a)(3).

In State v. Swindle, 30 S.W.3d 289, 293 (Tenn. 2000), our Supreme Court held that Class B misdemeanor assault was a lesser-included offense of aggravated sexual battery under part (b)(2) of the Burns test. The court reasoned that

[u]nlawful sexual contact, by its nature, encompasses extremely offensive or provocative contact. However, contact of an extremely offensive or provocative nature does not necessarily rise to the level of sexual contact. Therefore, . . . the element of extremely offensive or provocative touching establishes a less serious harm to the victim than touching for the purpose of sexual arousal or gratification.

Id. Likewise, the "unlawful sexual contact" that is required for sexual battery encompasses the "extremely offensive or provocative contact" requirement for assault. Tenn. Code Ann. § 39-13-505(a), 101(a)(3). Therefore, the extremely offensive or provocative touching element constitutes a less serious harm to the victim under part (b)(2) of the Burns test. Class B misdemeanor assault is a lesser-included offense of sexual battery.

A defendant's constitutional right to trial by jury is violated when the jury is not permitted to consider all lesser-included offenses supported by the evidence. See State v. Ely, 48 S.W.3d 710, 727 (Tenn. 2001). Thus, once it is determined that a trial judge erred by not charging the jury with a lesser-included offense, a reversal of the conviction is required unless the State can demonstrate that the error is harmless beyond a reasonable doubt. See id.

We simply cannot conclude that the trial court's failure to instruct the jury on simple assault was harmless beyond a reasonable doubt. The Defendant admitted to touching Ms. Frazier, but he contended that he was merely trying to calm her down. He specifically denied touching her in a sexual way. Because the sexual nature of the contact was at issue, we cannot say beyond a reasonable doubt that the trial court's failure to instruct on assault did not affect the outcome of the trial. Therefore, the Defendant's convictions for sexual battery must be reversed, and the case is remanded for a new trial.

Because we are ordering a new trial, several of the issues raised by the Defendant are now moot, including whether the Defendant knowingly waived his right to testify, whether portions of Ms. Sneed's testimony constituted inadmissible hearsay, and whether trial counsel was ineffective. However, in the interest of judicial efficiency and to facilitate possible further appellate review, we will address two of the Defendant's remaining issues. First, the Defendant complains that the prohibition of double jeopardy barred the second trial because he was not present when the first trial ended in a mistrial. He asserts that he was late coming into the courtroom; therefore, he was not present when the trial judge declared a mistrial due to the jury's inability to reach a verdict. At the hearing on the Defendant's motion for a new trial, the Defendant's trial counsel, Michael Thompson, testified that the Defendant did not enter the courtroom until "a couple of minutes" after the judge declared a mistrial and discharged the jury. He contends that his right to be present was violated, and his protection from double jeopardy should have precluded a retrial.

The Defendant is correct that a criminal defendant has the right to be present at every stage of the trial, including the return of the verdict. See Tenn. R. Crim. P. 43(a). However, there are several reasons that his absence at the time of the mistrial declaration will not bar a retrial. First, Tennessee Rule of Criminal Procedure 43(b)(1) states that the return of the verdict shall not be prevented where the defendant is voluntarily absent. In that instance, the defendant is deemed to have waived his or her right to be present. See id. In this case, the Defendant's attorney testified that both he and the Defendant left the courtroom when the jury retired to deliberate. The Defendant gave his cellular telephone number to the court officer. When his attorney was notified that the jury had returned, he called the Defendant, who arrived just a few minutes after the judge declared a mistrial. In this instance, we conclude that the Defendant was voluntarily absent; therefore, he waived his right to be present when the verdict was announced.

Furthermore, the Defendant's attorney, though present, did not object to the declaration of a mistrial. Mr. Thompson testified that he was present when the foreman of the jury informed the court that they were unable to reach a verdict, after which the judge declared a mistrial. The record reflects that counsel entered no objection to the mistrial. "[W]hen a defendant chooses not to object to the mistrial and give the trial court an opportunity to correct the error, consent may be inferred and, therefore, double jeopardy will not bar a subsequent prosecution." State v. Mounce, 859 S.W.2d 319, 323 (Tenn. 1993). By not objecting to the mistrial, the Defendant, through counsel, effectively consented to it, and double jeopardy will not preclude a retrial.

Finally, double jeopardy will not bar a retrial where occasioned by manifest necessity. See Ahern v. Ahern, 15 S.W.3d 73, 81 (Tenn. 2000). One example of a manifest necessity is a jury's inability to reach a verdict. See Mounce, 859 S.W.2d at 321-22. "When a mistrial is declared because of a manifest necessity, double jeopardy is not violated when the defendant is retried, even if he objected to the mistrial." Id. In this case, the foreperson of the jury informed the court that the jurors were unable to reach a unanimous verdict. The members of the jury agreed that they were "hopelessly deadlocked." Therefore, a manifest necessity existed for the court to declare a mistrial and order a retrial, and double jeopardy is not violated by the retrial. This issue is without merit.

The other issue that we address is whether the trial court's jury instruction regarding the requisite mens rea for the crime of sexual battery was erroneous. The trial court's instruction was as follows:

> For you to find the defendant guilty of this offense, the State must have proven beyond a reasonable doubt the existence of the following essential elements in each count:
>
> (1) the defendant had unlawful sexual contact with the alleged victim, Latausha Frazier, in which the defendant intentionally touched the alleged victim's intimate parts, or the clothing covering the immediate area of the alleged victim's intimate parts; and (2) that the sexual contact was accomplished without the consent of the alleged victim and the defendant knew, or had reason to know, at the time of the contact that the alleged victim did not consent; and (3) that the defendant acted either intentionally, knowingly or recklessly.

The Defendant argues that the trial court erred by instructing the jury that they could find him guilty if they found that he had acted recklessly. The crux of the Defendant's argument is that sexual battery is a "nature-of-conduct" offense, which cannot be committed recklessly. The Defendant asserts in his brief, "In other words, sexual battery criminalizes the intentional or knowing touching of another person's intimate parts. That is the prohibited conduct." The Defendant contrasts sexual battery with the crimes of murder, which is a result-of-conduct crime, and child rape, which hinges on circumstances surrounding the defendant's conduct, namely the age of the victim.

The Defendant is correct that, according to our criminal code, "'Reckless' refers to a person who acts recklessly with respect to <u>circumstances surrounding the conduct or the result of the conduct</u> when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." Tenn. Code Ann. § 39-11-302(c) (emphasis added). Generally, only the culpable mental states of "intentional" and "knowing"are applicable to nature-of-conduct crimes. <u>See</u> <u>id.</u> § 39-11-302(a), (b).[1] However, the Defendant's characterization of sexual battery as strictly a nature-of-conduct offense is incorrect.

Sexual battery is unlawful sexual contact with a victim by the defendant where the victim did not consent "and the defendant knows or has reason to know at the time of the contact that the victim did not consent." Tenn. Code Ann. § 39-13-505(a)(2). The crime of sexual battery contains different culpable mental states. <u>See</u> <u>State v. Parker</u>, 887 S.W.2d 825, 827 (Tenn. Crim. App. 1994). While intentional conduct is required as that conduct refers to "sexual contact," <u>see</u> Tenn. Code Ann. § 39-13-501(6), the element regarding the victim's lack of consent is a circumstance surrounding the conduct. Therefore, reckless conduct is sufficient to satisfy the element of the victim's lack of consent. <u>See</u> <u>State v. Howard</u>, 926 S.W.2d 579, 587 (Tenn. Crim. App. 1996) (holding that reckless

[1]<u>But</u> <u>see</u> Tenn. Code Ann. § 39-13-103(a). ("A person commits an offense who recklessly engages in conduct which places or may place another person in imminent danger of death or serious bodily injury.") Such reckless nature-of-conduct crimes are rare in our criminal code, however.

conduct applies to element of aggravated sexual battery that victim is less than thirteen); see also State v. Aubrey A. Davis, No. E2001-02194-CCA-R3-CD, 2003 WL 21663686, at *4 (Tenn. Crim. App., Knoxville, July 15, 2003); State v. Joey L. Salcido, No. M1999-00501-CCA-R3-CD, 2001 WL 227357, at *10 (Tenn. Crim. App., Nashville, Mar. 8, 2001). Furthermore, "[i]f the definition of an offense . . . does not plainly dispense with a mental element, intent, knowledge or recklessness suffices to establish the culpable mental state." Tenn. Code Ann. § 39-11-301(c) (emphasis added). Therefore, the trial court did not err by instructing the jury as to the mens rea of recklessness.

However, as we noted in Howard, "When an offense has different mens rea for separate elements, the trial court must set forth the mental state for each element clearly so that the jury can determine whether the state has met it burden of proof." 926 S.W.2d at 587. In this case, the trial court failed to clearly instruct the jury as to the mens rea of each element. Although the court did instruct the jury that to have had sexual contact with the victim, the Defendant must have "intentionally touched the alleged victim's intimate parts," it did not explain that the mens rea of recklessness was applicable only to the element regarding the victim's consent. Upon retrial, the trial court should carefully instruct the jury as to the applicable mens rea for each element of the offense.

Because the trial court erred by failing to charge the lesser-included offense of misdemeanor assault, the Defendant's convictions are reversed and the case is remanded to the trial court for a new trial.

_____
DAVID H. WELLES, JUDGE