IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 20, 2018

**STATE OF TENNESSEE v. LLOYD RUSH PRATT, JR.**

**Appeal from the Circuit Court for Perry County**
**No. 2015-CR-17    Joseph Woodruff, Judge**

_____

**No. M2017-01317-CCA-R3-CD**

_____

Defendant, Lloyd Rush Pratt, Jr., appeals from his convictions for driving as an habitual motor vehicle offender, driving under the influence, and failure to exercise due care, for which he received an effective sentence of one year with 120 days to serve followed by supervised probation. Defendant argues on appeal that the trial court erred in denying a mistrial, that the State committed a *Brady* violation, and that the trial court allowed statements of a witness to be admitted despite her unavailability at trial. For the following reasons, we determine that the trial court erred in denying a mistrial and improperly admitting hearsay evidence. The judgments of the trial court are reversed and remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Reversed and Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT L. HOLLOWAY, JR., JJ., joined.

Vanessa Pettigrew Bryan, District Public Defender; Jacob Schwendimann (at trial) and David Christensen (at trial and on appeal), Assistant Public Defenders, for the appellant, Lloyd Rush Pratt, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Kim R. Helper, District Attorney General; and Nicole Dusche, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

On August 24, 2015, the Perry County Grand Jury returned a multiple count indictment charging Defendant with the following: one count of operating a motor vehicle after having been declared an habitual motor vehicle offender ("HMVO"); driving under the influence ("DUI"); DUI per se; driving on a suspended, cancelled or revoked license; failure to provide evidence of financial responsibility; and failure to exercise due care.

Prior to trial, Defendant filed a motion in limine in which he asked the trial court to prohibit the State from eliciting from any witness, video, or audio recording any statement made by Christy Reeves. As the basis for this motion, Defendant asserted that Ms. Reeves was present during the incident from which the charges originated but that she passed away shortly thereafter due to "health issues unrelated to this case." Defendant argued that any statements made by Ms. Reeves were hearsay and violated Defendant's right to confront adverse witnesses. There is neither a transcript of a hearing on this motion nor a formal order granting this motion in the technical record.[1]

After several continuances, the case proceeded to a jury trial. After jury selection but prior to the opening statements, counsel for Defendant moved the trial court to dismiss one of the jurors because of an "interaction" between the juror and counsel for the State. According to counsel for Defendant, one of the jurors "touched" counsel for State, showing "some favoritism toward the State" prior to the presentation of the proof. The trial court took the motion under advisement.

At trial, Deputy Scott Bell of the Perry County Sheriff's Department testified that he was dispatched to a one vehicle accident in the "early morning hours" of February 15, 2015. When he arrived at the scene he observed one "white vehicle off to the left side of the road." The vehicle was about twenty feet "off the roadway." According to Deputy Bell "there was a white male in the driver's seat and a female passenger in the passenger seat." The male identified himself as Defendant.

Deputy Bell was "not sure" if the vehicle was running when he arrived. He assessed Defendant and the female for injuries. The female complained of pain in her "back and lower neck area." Deputy Bell called Emergency Medical Services ("EMS") to respond to the scene. Deputy Bell explained that Defendant "got out [of the vehicle] for a minute and I asked him to sit back down. He said he wasn't feeling real good." Counsel for Defendant objected on the basis that the statement was hearsay and because the defense had received "no notice of any statements made to Deputy Bell by the [D]efendant." The trial court overruled the objection.

---

[1] From discussion between the trial court and the parties at trial, it appears that the parties stipulated to the grant of this motion.

Deputy Bell went on to testify that Defendant "wasn't real sure" how the crash happened but that Defendant "said he was" driving. Again, counsel for Defendant objected, claiming that it was "a discovery issue" because Defendant had "no notice that [Defendant] made any statements to Deputy Bell."

At that point, the trial court excused the jury from the courtroom. After a jury-out hearing, the trial court determined that the State violated discovery rules by failing to disclose statements made by Defendant at the scene. The trial court informed the jury that they were not permitted to consider any portions of Deputy Bell's testimony relating to statements made by Defendant.

Counsel for Defendant moved for a mistrial, arguing that the "whole defense [was] that he never says he was driving" and that the officers "never asked him." The trial court determined that a curative instruction would suffice, denying the motion for mistrial. The trial court issued a curative instruction to the jury. The trial court then individually polled the jurors to ascertain whether they could follow the directive. Each juror confirmed that they would be able to follow the curative instruction.

Deputy Bell continued his testimony, explaining that he remained on the scene until EMS and the Tennessee Highway Patrol ("THP") arrived on the scene. THP arrived at around 3:15 a.m. Deputy Bell explained that any accident that occurred outside the city limits was handled by THP. The crash site was outside the city limits; therefore, THP performed the investigation. Deputy Bell did not prepare a crash report because it was not his case. Instead, Deputy Bell assisted THP Trooper Cody Allen in his crash investigation, specifically by walking along the road to try to determine where the vehicle left the roadway.

On cross-examination, Deputy Bell admitted that he did not see the car leave the roadway. Deputy Bell also admitted that he was uncertain whether Defendant or the female had on a seatbelt when he arrived, but he "believe[d]" the female was wearing a seatbelt. Deputy Bell described Defendant as having a "faint smell of alcohol."

Michael Lynn, a critical care paramedic for Perry County EMS, testified that he responded to the crash in this case. When he arrived on the scene, Defendant was in the "front seat, left side, driver." Defendant admitted that he consumed alcohol. Mr. Lynn smelled alcohol on the Defendant's person and wrote in his report that Defendant informed him that he thought "he blacked out, then ran off the road."

When Trooper Allen arrived, he observed a single vehicle resting "on a culvert with the undercarriage on top of the culvert off the roadway, down an embankment in a ditch, roughly 20-25 feet off the road." Defendant was in an ambulance on a stretcher

and the female passenger was "outside of the vehicle with a blanket wrapped around her body." During his investigation, Trooper Allen concluded that Defendant was the driver of the vehicle and Ms. Reeves was the passenger based on "[s]tatements . . . told to [him] by the - - by the passenger [Ms. Reeves] and by the [Deputy]." Counsel for Defendant objected on the basis that the State was not permitted to utilize statements of Ms. Reeves, described as the female passenger. The trial court overruled the objection, finding that Trooper Allen never said "what those statements were." Trooper Allen was unaware that Ms. Reeves would not appear at trial. The trial court informed Trooper Allen and the jury that the parties had stipulated that Ms. Reeves was deceased at the time of trial.

According to Trooper Allen, Defendant "didn't know" what happened during the crash because he blacked out. Trooper Allen said Defendant was having a hard time keeping his eyes open at the scene. His eyes were "bloodshot, watery . . . with constricted pupils." When asked how much he had to drink, Defendant informed Trooper Allen that he had consumed six twelve-ounce beers. Trooper Allen described Defendant's speech as "slurred" and recalled that he "fell asleep actually [on] multiple occasions" during their conversation. Defendant consented to a blood draw. Trooper Allen sent a "blood kit" in the ambulance with Defendant so that the blood draw could be performed at the hospital.

Trooper Allen could not locate any skid marks on the road so he opined that the driver "possibly had lost control of the vehicle." He also discovered that the registered owner of the vehicle was the daughter of the female passenger.

When Defendant arrived at the hospital, Tracy Eschmann, a nurse, drew Defendant's blood. By that time it was 3:30 a.m. Testing confirmed that Defendant's blood contained alcohol and also contained oxycodone. Trooper Allen sent the blood sample to the Tennessee Bureau of Investigation ("TBI") for analysis. Special Agent Jaquuia Ogilvie of the TBI received Defendant's blood sample for analysis. The test revealed Defendant had a blood alcohol level of .267.

At the conclusion of the presentation of the State's proof, the trial court determined that there was not enough evidence to sustain a conviction for violation of the financial responsibility law. As a result, the trial court dismissed this count of the indictment. The jury found Defendant guilty of driving as an HMVO; DUI; DUI per se; driving on a suspended, cancelled, or revoked license; and failure to exercise care. The trial court dismissed the conviction for driving on a suspended, canceled, or revoked license because the jury found Defendant guilty of the HMVO violation.

At a sentencing hearing, the trial court merged the convictions for DUI and DUI per se and sentenced Defendant to an effective sentence of one year, with 120 days to

serve followed by supervised probation. Subsequently, Defendant filed a motion for new trial, which the trial court denied after a hearing. This timely appeal followed.

*Analysis*

*I. Mistrial*

Defendant argues that the trial court erred in denying the motion for mistrial and issuing an insufficient curative instruction to "remedy Deputy Bell's testimony that [Defendant] admitted to driving the vehicle." Defendant agrees with the trial court's assessment that the State violated discovery rules by failing to inform Defendant of oral statements made by Defendant to Deputy Bell at the scene of the incident but insists that the curative instruction issued was inadequate to cure the prejudice of the evidence, especially in light of the defense presented at trial. The State disagrees.

As recounted above, Deputy Bell testified about several statements Defendant made to the deputy after the incident. Counsel for Defendant objected to these statements at trial on the basis that they were not provided by the State during discovery. The trial court reviewed Defendant's discovery request which included a request for "the substance of any of the defendant's oral statements made before or after arrest in response to interrogation by any person the defendant [k]new was a law enforcement officer, if the State intends to offer the statement into evidence at trial."[2] Counsel for the State commented that Deputy Bell was on the witness list submitted to Defendant prior to trial and that counsel for Defendant had participated in conversations with the State about his testimony.

At this point, the trial court asked the jury to step out of the courtroom. Counsel for the State reported that Deputy Bell did not make a written report of the incident and that there was nothing in the file to indicate Defendant made statements to Deputy Bell at the scene of the incident. The trial court determined that there was an "un-excused" "failure to disclose" the statements. As a result, the trial court informed the parties that it would "instruct the jury that they are not to regard Deputy Bell's testimony for any purpose . . . with respect to those portions of his testimony with respect to statements attributed to the defendant."

The trial court ultimately sustained the objection after the jury-out hearing, concluding that the State failed to disclose the statements. As a result, the trial court informed the parties that it would issue a curative instruction to the jury. Counsel for Defendant moved for a mistrial, arguing that the entire case was based on the defense that Defendant was not the driver of the vehicle and that it was impossible to "unring the bell"

---

[2] Interestingly, the discovery request does not appear in the record on appeal.

when the jury heard from Deputy Bell that Defendant admitted that he was the driver. The trial court denied the motion, issued a curative instruction to the jury, and polled the jurors to ensure they understood the instruction.

The decision whether to grant a mistrial due to inadmissible testimony from a witness is a matter resting in the sound discretion of the trial court and will not be overturned absent an abuse of discretion. *State v. Nash*, 294 S.W.3d 541, 546 (Tenn. 2009). "'[N]ormally, a mistrial should be declared only if there is a manifest necessity for such action.'" *Id.* (quoting *State v. Saylor*, 117 S.W.3d 239, 250-51 (Tenn. 2003)). A manifest necessity exists when something has occurred that would prevent an impartial verdict, thereby resulting in a miscarriage of justice if a mistrial were not declared, *State v. Land*, 34 S.W.3d 516, 527 (Tenn. Crim. App. 2000), and there is "no feasible alternative to halting the proceedings," *State v. Knight*, 616 S.W.2d 593, 596 (Tenn. 1981). The burden is on the party seeking the mistrial to show that a manifest necessity exists. *Land*, 34 S.W.3d at 527. Even though "'no abstract formula should be mechanically applied and all circumstances should be taken into account,'" *Nash*, 294 S.W.3d at 546 (quoting *State v. Mounce*, 859 S.W.2d 319, 322 (Tenn. 1993)), the Tennessee Supreme Court has identified three nonexclusive factors for determining whether a mistrial was warranted because of inappropriate testimony presented to the jury: "(1) whether the State elicited the testimony, or whether it was unsolicited and unresponsive; (2) whether the trial court offered and gave a curative jury instruction; and (3) the relative strength or weakness of the State's proof." *Id.* at 547 (citing *State v. Smith*, 893 S.W.2d 908, 923 (Tenn. 1994)).

First, the State elicited the testimony from Deputy Bell. The following exchange occurred during his direct examination:

[State]: Okay. At that point, did either of them get out of the vehicle?

[Deputy Bell]: [Defendant] got out for a minute and I asked him to sit back down. He said he wasn't feeling real good.

At that point, counsel for Defendant objected for the first time. The trial court initially overruled the objection and the questioning of Deputy Bell continued:

[Deputy Bell]: He was - - he was trying to get back out of the vehicle and I asked him to sit back down when he said he wasn't feeling good til[] the EMS could get there and make sure that they were both okay.

[State]: Did he tell you anything about how the crash happened?

[Deputy Bell]: He said he wasn't real sure.

[State]: Okay. Did he - - did you ask him who was driving?

[Deputy Bell]: I did.

[State]: And what did he say?

[Deputy Bell]: He said he was. He was sitting in the driver's seat.

At that point, counsel for Defendant objected to Deputy Bell's testimony for the second time. The trial court held a jury-out hearing and determined that the testimony was inappropriate because the State violated discovery.

Second, the trial court offered and gave the following curative instruction to the jury:

> I have determined that the law requires that I exclude from your considerations those portions of Deputy Bell's testimony regarding statements allegedly made by the [D]efendant to Deputy Bell at the scene of the crash. The reason that I am sustaining that objection is that the defense was not given notice of the substance of those statements prior to Deputy Bell's testimony here in court today, and that failure was a violation of the Rules of Criminal Procedure.

The trial court then individually polled the jurors to ascertain whether they could follow the directive. Each juror confirmed that they would be able to follow the curative instruction.

On appeal, Defendant argues that the instruction given by the trial court was inadequate because "[the testimony regarding Defendant's statements] was so prejudicial that the curative instruction issued by the Court was inadequate to ensure a fair trial." While juries are presumed to follow the instructions of the trial court, *State v. Banks*, 271 S.W.3d 90, 137 (Tenn. 2008); *State v. Reid*, 164 S.W.3d 286, 346 (Tenn. 2005), the testimony from Deputy Bell that Defendant told him he was the driver of the vehicle, in our view, prevented an impartial verdict. Defendant's theory of the case was that he was not the driver of the vehicle. We acknowledge that Defendant was seen by Deputy Bell behind the wheel of the car at the scene of the crash, but at that time, the vehicle was on a culvert off the road. The testimony of Deputy Bell herein, made before the jury, that Defendant told him he was the driver of the vehicle was highly prejudicial, even though the trial court admonished the jury not to consider it. *Cf. State v. Climer*, 400 S.W.3d 537, 570 (Tenn. 2013) ("[T]he defendant's own confession is probably the most probative and damaging evidence that can be admitted against him.") (quoting Arizona v.

Fulminante, 499 U.S. 279, 296 (1991)). Generally, erroneously admitted evidence will not be a cause for reversal "unless real doubt is raised as to whether the judicial warning against its consideration was effective." *Blankenship v. State*, 410 S.W.2d 159, 160-61 (Tenn. 1966).

> It is only when evidence erroneously admitted in a criminal case is of such apparent weight and so prejudicial in effect that the judicial warning against it seems light and unavailing by comparison that the error remains uncured by striking it out.

*Id.* at 161 (quoting *Looker v. United States*, 240 F. 932, 935 (2d. Cir. 1917)). In the words of counsel for Defendant, once Deputy Bell testified that Defendant told him he was driving the vehicle, "[y]ou can't unring that bell." We are constrained to conclude that the evidence erroneously admitted was prejudicial and that it affected the jury's verdict. Thus, the trial court improperly determined that there was not a manifest necessity present and erred in refusing to grant a mistrial as there was "no feasible alternative to halting the proceedings." *Knight*, 616 S.W.2d at 596.

## II. Brady Violation

Defendant argues that the State violated his right to due process as set forth in *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose an exculpatory statement made by Ms. Reeves to Deputy Bell. At the hearing on the motion for new trial, Deputy Bell testified that Ms. Reeves informed the officer that she was "sick and [Defendant] was taking her to the doctor." Deputy Bell admitted that he did not make a written report of the statement but that he told Trooper Allen about the statement. During cross-examination at the hearing on the motion for new trial, Deputy Bell claimed that he had never been asked about statements made by Ms. Reeves until the hearing on the motion for new trial. On appeal, Defendant argues that this statement was in the possession of the State prior to trial, that the State failed to include it in response to his discovery request, and that the statement was exculpatory, favorable, and material because it would have supported a defense of necessity. The State argues that the trial court properly determined that the evidence "was not exculpatory and that a defense of necessity would not have been warranted."

"Every criminal defendant is guaranteed the right to a fair trial under the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the "Law of the Land" Clause of Article I, section 8 of the Tennessee Constitution." *Johnson v. State*, 38 S.W.3d 52, 55 (Tenn. 2001). In the landmark case of *Brady v. Maryland*, the United States Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the

prosecution." 373 U.S. at 87. The duty to disclose extends to all "favorable information" regardless of whether the evidence is admissible at trial. *Johnson*, 38 S.W.3d at 56. Additionally, "the prosecutor is responsible for 'any favorable evidence known to the others acting on the government's behalf in the case, including the police.'" *Strickler v. Greene*, 527 U.S. 263, 275 n.12 (1999) (quoting *Kyles v. Whitley*, 514 U.S. 419, 437 (1995)). However, the State is not required to disclose evidence that the accused already possesses or is otherwise able to obtain. *State v. Marshall*, 845 S.W.2d 228, 233 (Tenn. Crim. App. 1992).

There are four prerequisites a defendant must demonstrate in order to establish a due process violation under *Brady*: (1) the defendant requested the information (unless the evidence is obviously exculpatory, in which case the State is required to disclose the evidence); (2) the State suppressed the information; (3) the information was favorable to the accused; and (4) the information was material. *State v. Edgin*, 902 S.W.2d 387, 389 (Tenn. 1995). Moreover, the defendant has the burden of proving a constitutional violation by a preponderance of the evidence. *State v. Spurlock*, 874 S.W.2d 602, 610 (Tenn. Crim. App. 1993). The key to proving a constitutional violation is to show that the omission is of such significance as to deny the defendant the right to a fair trial. *United States v. Agurs*, 427 U.S. 97, 108 (1976). Whether a petitioner is entitled to a new trial based upon a *Brady* violation "presents a mixed question of law and fact." *Cauthern v. State*, 145 S.W.3d 571, 599 (Tenn. Crim. App. 2004).

> The lower court's findings of fact, such as whether the defendant requested the information or whether the [S]tate withheld the information, are reviewed on appeal de novo with a presumption that the findings are correct unless the evidence preponderates otherwise. The lower court's conclusions of law, however, such as whether the information was favorable or material, are reviewed under a purely de novo standard with no presumption of correctness.

*Id.* We shall discuss each element in turn.

### *1. Request for the evidence*

First, we must determine whether trial counsel requested the evidence or whether it was obviously exculpatory, thereby triggering the State's duty to disclose it. "When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable." *Agurs*, 427 U.S. at 106, as modified by *United States v. Bagley*, 473 U.S. 667, 667 (1985). Here, there is no direct evidence in the record that trial counsel made a specific request for statements made by Ms. Reeves because the

record does not contain the discovery request filed by Defendant.[3]  However, the technical record does contain a motion in limine seeking to exclude any statements of Ms. Reeves because she was unavailable as a witness at trial.  There was also a fairly extensive discussion about the discovery requests made by Defendant prior to trial during Deputy Bell's testimony.  Even though the trial court quoted from a pre-trial discovery motion during trial in a jury-out hearing, no such motion was entered as an exhibit or appears in the technical record.  Allegations contained in pleadings, counsel's arguments and statements of facts contained in an appellate brief, and counsel's statements made in open court are not evidence.  *See State v. Bennett*, 798 S.W.2d 783, 789 (Tenn. Crim. App. 1990); *State v. Roberts*, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988).  The trial court, however, noted that Defendant filed a routine discovery request.  The evidence does not preponderate against this factual finding.  *Cauthern*, 145 S.W.3d at 599.  Thus, we determine that counsel made a request for the evidence.

### 2. Suppression of the evidence

Next, we must determine whether the State suppressed the evidence.  As discussed above, the record does not contain the discovery request filed by Defendant.  However, the trial court noted that a routine discovery request was filed and counsel for the State confirmed that they had an open-file discovery policy.  This Court has held that an open-file discovery policy "does not discharge [the prosecution's] affirmative duty under *Brady* to disclose favorable, material evidence."  *Jordan v. State*, 343 S.W.3d 84, 98 (Tenn. Crim. App. 2011) (relying on *Strickler*, 527 U.S. at 238 n.23).  In fact, "an incomplete response to a *Brady* request may mislead the defense into thinking that certain evidence does not exist," *Freshwater v. State*, 354 S.W.3d 746, 760 (Tenn. Crim. App. 2011) (citing *Bagley*, 473 U.S. at 682-83), rendering a specific request for it during trial even more unlikely.  While the State is not required to disclose its entire file in order to satisfy the requirements of *Brady*, *see Bagley*, 473 U.S. at 675, a defendant is "entitled to rely on the [S]tate's assertion that it provided him with its entire file," *Jordan*, 343 S.W.3d at 98.

In this case, there was nothing memorializing Ms. Reeves's statements in the pre-trial discovery provided to trial counsel, despite the State's open-file discovery policy.  In fact, it appears that the statements were not disclosed until Deputy Bell testified to their substance at the hearing on the motion for new trial.  Deputy Bell explained that he had "not been asked" about Ms. Reeves's statements until the hearing on the motion for new trial.  Deputy Bell worked for the Perry County Sherriff's Office and responded to the

---

[3] While the record does not include a discovery request by Defendant as required by Rule 16 of the Rules of Criminal Procedure, it does include an Arraignment and Scheduling Order signed by the trial judge.  This order indicates that the Defendant request discovery from the State "subject to disclosure pursuant to Rule 16(a) of the Tennessee Rules of Criminal Procedure."  It is not signed by counsel for Defendant.

scene in his capacity as a law enforcement officer. Because the State is responsible for evidence known to others working on its behalf, *see Strickler*, 527 U.S. at 275 n.12; *Kyles*, 514 U.S. at 437, we conclude that the State did suppress evidence.

### 3. Favorability of the evidence

"Evidence 'favorable to an accused' includes evidence deemed to be exculpatory in nature and evidence that could be used to impeach the state's witnesses." *Johnson*, 38 S.W.3d at 55-56. Favorable evidence includes evidence that "provides some significant aid to the defendant's case, whether it furnishes corroboration of the defendant's story, calls into question a material, although not indispensable, element of the prosecution's version of events, or challenges the credibility of a key prosecution witness." *Id.* at 56-57. Favorable evidence also includes "'information that would have enabled defense counsel to conduct further and possibly fruitful investigation.'" *Id.* at 56 (quoting *Marshall*, 845 S.W.2d at 233).

The trial court determined that Ms. Reeves's statement would have actually been inculpatory rather than favorable to the defense. We agree. Defendant's theory all along was that he was not the driver of the vehicle, so Ms. Reeves's statement did not provide significant aid to the defense, call into question a material element of the prosecution's version of the events, or challenge the credibility of a key prosecution witness. Moreover, the discovery of Ms. Reeves's statement would not have led to further investigation because Defendant obviously knew of Ms. Reeves's existence and could have spoken to her before she passed away. Upon our de novo review of the record, we conclude that the statement of Ms. Reeves was not favorable to the defense.

### 4. Materiality of the evidence

Evidence is considered material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the results of the proceeding would have been different." *Bagley*, 473 U.S. at 682. The defendant does not need to prove that disclosure of the evidence would have resulted in an acquittal. *See Kyles*, 514 U.S. at 434. "Nor is the test of materiality equivalent to that of evidentiary sufficiency, such that we may affirm a conviction or sentence when, 'after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions.'" *Johnson*, 38 S.W.3d at 58 (quoting *Strickler*, 527 U.S. at 275). Rather, the question is whether in the absence of the evidence, the defendant received a fair trial, "understood as a trial resulting in a verdict worthy of confidence." *Kyles*, 514 U.S. at 434. The defendant must show that "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Irick v. State*, 973 S.W.2d 643, 657 (Tenn. Crim. App. 1998) (citing *Edgin*, 902 S.W.2d at 390). A reviewing court should evaluate the evidence "'in light of the totality

of the circumstances and with an awareness of the difficulty of reconstructing in a post-trial proceeding the course that the defense and the trial would have taken had the defense' been made aware of the favorable information." *Spurlock*, 874 S.W.2d at 619 (quoting *Bagley*, 473 U.S. at 683). In other words, "the materiality of the suppressed evidence must be evaluated within the context of the entire record." *Jordan v. State*, 343 S.W.3d 84, 97 (Tenn. Crim. App. 2011).

The trial court found that the statement was not material. The trial court reasoned that because Ms. Reeves did not seek medical attention after the accident and did not "avail herself of the opportunities she had at the scene to get medical assistance," her statement about Defendant taking her to the doctor did not raise the defense of necessity and was not material.

Necessity as a defense acts to justify unlawful conduct in situations where "(1) The person reasonably believes the conduct is immediately necessary to avoid imminent harm; and (2) The desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct." T.C.A. § 39-11-609. The Sentencing Commission Comments to this section caution that the defense of necessity applies only in those rare situations where criminal activity is "an objectively reasonable response to an extreme situation." The Sentencing Commission provides the example of "a hiker, stranded in a snowstorm, who spends the night in a vacant cabin rather than risking death sleeping in the open" as a necessity defense to a charge of trespassing.

At the hearing on the motion for new trial, the trial court determined that the evidence did not fairly raise the defense of necessity. The trial court commented that:

> [b]ecause [the] court would not have instructed the jury of a necessity defense based on this statement, the statement is not exculpatory on a material point. The statement was neither material nor favorable to the Defendant as applied. The [c]ourt further finds that, on the balance, the inculpatory nature of the statement outweighs any exculpatory nature it may have had.

While the alleged statement was not memorialized in writing or captured on video, the alleged statement, that Defendant was taking Ms. Reeves to the hospital, does not support a defense of necessity when viewed in light of the additional evidence available. The alleged statement would place Defendant squarely behind the wheel of the car. The medical proof showed that Defendant's blood alcohol level was well above the legal limit. The dashcam video from Trooper Allen's vehicle depicts Trooper Allen talking to Ms. Reeves. She does not ask about getting medical care, instead choosing to talk to Trooper Allen about the vehicle registration and making arrangements for towing the

vehicle from the scene. Ms. Reeves appears briefly on camera and does not appear to be in need of immediate medical attention. She can even be heard telling Trooper Allen that she does not know if she will go to the hospital. There is nothing in this dashcam video, in our view, that would support a defense of necessity. Additionally, Ms. Reeves did not seek medical attention at the scene and did not go to the hospital. Even if Ms. Reeves's statement would have caused the jury to completely discount the conclusion of the officers that Defendant was merely an intoxicated driver and was not in the process of taking Ms. Reeves to the doctor, it would not have cast "the whole case in such a different light as to undermine confidence in the verdict." *Irick*, 973 S.W.2d at 657. The evidence is not material.

Defendant has not established all four prerequisites to establish a *Brady* violation. Consequently, he is not entitled to relief on this issue.

### III.  Indirect Hearsay

Lastly, Defendant argues that the trial court permitted testimony that violated both hearsay rules and the Confrontation Clause. Specifically, Defendant complains about Trooper Allen's testimony that he learned from Ms. Reeves and Deputy Bell that Defendant was the driver of the vehicle during the accident, arguing that the trial court "permitted testimony in breach of a pre[-]trial ruling excluding such testimony." The State responds that Defendant failed to prepare an adequate record for our review.

The following exchange occurred during the testimony of Trooper Allen:

[State]: Okay.  And based on your investigation, you testified that [Defendant] was the driver.  Was that what you determined?

[Trooper Allen]: Yes, I did come to the conclusion that he was the driver.

[State]: Okay.  And what was that conclusion based on?

[Trooper Allen]: Statements that was told to me by the - - by the passenger and by the sheriff . . . .

Counsel for Defendant objected, arguing that the State was not permitted to use the statements of the passenger. The trial court overruled the objection on the basis that the witness had not said what the statements of the passenger were, but had only "testified about his conclusion."

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn.

-13-

R. Evid. 801(c). Hearsay is generally inadmissible except as allowed by the rules of evidence or other applicable law. Tenn. R. Evid. 802. The determination of whether a statement is hearsay or fits within one of the narrow exceptions to the hearsay rule are questions of law and subject to a de novo review by this Court. *Kendrick v. State*, 454 S.W.3d 450, 479 (Tenn. 2015). A trial court's failure to exclude inadmissible hearsay evidence is subject to a harmless error analysis. *See State v. Long*, 45 S.W.3d 611, 624 (Tenn. Crim. App. 2000). Harmless error does not require reversal unless "error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b).

Indirect hearsay, a way to "get in hearsay through the back door," is still inadmissible hearsay unless it fits within the hearsay exceptions. *See* Neil P. Cohen, et al., *Tennessee Law of Evidence*, § 8.01[11][b] (6th ed. 2011). In *State v. Robert Spencer*, No. W2014-02454-CCA-R3-CD, 2016 WL 325460, at *4-5 (Tenn. Crim. App. Jan. 27, 2016), *perm. app. denied* (Tenn. June 24, 2016), this Court explained indirect hearsay. In *Robert Spencer*, a drug task force agent testified that "the house [on Olympic Street] and the [d]efendant matched the descriptions provided by the source." *Id.* at *4. This testimony, in conjunction with the agent's testimony about his background in narcotics investigations, effectively "allowed the jury to learn what the source told [the agent], that the [d]efendant was selling cocaine from the house on Olympic Street." *Id.* In other words, the agent's testimony "relayed the hearsay statements of the source." *Id.*

> This [C]ourt has previously held that "a police officer's testifying to an out of court statement to explain his actions" is not hearsay but cautioned that "in most situations the details of information obtained through a confidential informant should not be admitted at trial." *State v. Brown*, 915 S.W.2d 3, 6 (Tenn. Crim. App. 1995). Instead, "testimony that [the officer] acted 'upon information received,' or words to that effect, should be sufficient" to explain the officer's actions. *Id.* (quoting *McCormick on Evidence* § 249, at 104 (4th ed. 1992)).

*Id.* at *5. This Court went on to conclude that the testimony in *Robert Spencer* was hearsay and that the trial court erred in admitting testimony that the house and the defendant in the house matched the descriptions provided by the confidential informant. However, the Court determined that the admission of the hearsay was harmless in light of the strong circumstantial evidence of guilt presented by the State. *Id.*

Using that rationale in the case herein, we conclude that Trooper Allen's testimony that Defendant was the driver based on "statements" made by Ms. Reeves was indirect hearsay. Trooper Allen testified that he made the determination that Defendant was the driver of the vehicle based not on his own personal observations but rather on the statements of Ms. Reeves, statements which Defendant sought to exclude prior to trial.

Ms. Reeves, much like the confidential informant in *Robert Spencer*, did not testify at trial.  As the parties stipulated, Ms. Reeves died shortly after the incident.  The proof establishing that Defendant was the driver was largely circumstantial.  No one testified that they actually saw Defendant driving the vehicle at the time of the crash.  In fact, the only testimony that Defendant was the driver of the vehicle came from improperly admitted testimony during Deputy Bell's direct examination.  In our view, therefore, the admission of the indirect hearsay, especially when combined with the improperly introduced testimony from Deputy Bell discussed above, more probably than not affected the judgment.  Therefore, the admission of the evidence could not be harmless.

*Conclusion*


For the foregoing reasons, the judgments of the trial court are reversed and remanded.


_____
TIMOTHY L. EASTER, JUDGE